GULF, COLORADO & SANTA FE RAILWAY COMPANY V. J. E. JONES.

No. 6872.

1. **Written Contract not Varied by Parol.** — The general rule is well understood, that a parol agreement can not be engrafted upon a written contract clear in its terms, in the absence of fraud, accident, or mistake. The exceptions to the rule are as familiar as the rule itself, viz., that a deed absolute on its face may be shown to be a mortgage or a trust, or that the consideration in a deed is not properly stated.

2. **Case in Judgment — Construction.**—A contract between Jones and the railway company recited, "in consideration of the purchase of land from me for the location of a town site and the location of a depot at a point between stations 1670 and 1678 on the located line of the Gulf, Colorado & Santa Fe Railway running northeast to Red River," etc. This language indicated that there was some understood agreement between it and Jones requiring it to place a depot between the sections named. The agreement referred to was binding upon the railway company if made by parol. The circumstances in evidence clearly showed what the agreement was and its consideration. Its breach was ground for damages. In such cause of action fraud was not a necessary allegation.

3. **Authority of Agent to Bind Railway Company in Locating a Depot.** See facts held sufficient to sustain a finding of agency binding the railway company in contract for locating a depot on its line.

4. **Ratification.**—See facts held sufficient to show a ratification by the railway company of the acts of one acting for it in making a contract for the location of a depot.

5. **Circumstances in Proof of Agency.** — As a circumstance tending to prove agency of Wylie it was competent to allow a witness to testify: "I knew Waters S. Davis, of Galveston. He was secretary of defendant company. His office was in Galveston. I presented him with a petition for change of name of depot at Copeville. He referred me to Colonel Snyder, and upon going to Snyder he referred me to Colonel Wylie. Wylie reported on it."

APPEAL from Collin. Tried below before Hon. H. O. HEAD.
The opinion states the case.

*J. W. Terry* and *Alexander & Clark*, for appellant.—1. Where parties reduce a contract to writing they are presumed to embody in it the terms and stipulations as finally agreed to and to which they mutually assented; and in the absence of averment that by accident, fraud, or mistake plaintiff was mistaken or misled as to the words or stipulations actually inserted in the contract, defendant's first special exception should have been sustained. Where the stipulations in a deed are clearly expressed and confessedly understood by parties thereto, it is contrary to public policy to permit one of the parties thereto to afterward claim the benefit of alleged verbal stipulations and agreements not supported by but contradictory to the recitals of the instrument itself. Rogan v. Williams & Co., 63 Texas, 123; Lott v. Kaiser, 61 Texas, 665; Bruner Bros. v. Strong, 61 Texas, 555; Wooters v. Railway, 54 Texas, 294; Watrous v. McKie, 54 Texas, 65; Railway v.

Pfeuffer, 56 Texas, 66; Custard v. Custard, 25 Texas Supp., 50; Factory v. Corning, 14 How., 217; Ins. Co. v. Mowry, 6 Otto, 546; Maryland v. Railway, 22 Wall., 113; 1 Greenl. on Ev., secs. 275, 281, 282.

2.   Where there is a strong conflict in the testimony the admission of the least incompetent testimony over objection duly excepted to is reversible error.   Declarations of an agent as to the extent of his authority are not binding on the principal.   Railway v. Garrett, 52 Texas, 138; Railway v. McKinney, 55 Texas, 176; Ross v. Kornrumpf, 64 Texas, 390; Jackson v. Deslonde, 1 Posey's U. C., 674; Latham v. Pledger, 11 Texas, 440.

*Garnett, Muse & Mangum,* for appellee.—1. It is not necessary, in order to render the representations and assurances of a party on which others have acted binding upon him, that they should have relation to facts which had previously transpired.   The representations as to what defendant would do when used as inducements to others to contract with it, became assurances and undertakings which it was bound to fulfill.   Henderson v. Railway, 17 Texas, 580.

2.   Several writings executed between the same parties substantially at the same time and relating to the same subject matter, may be read together as forming parts of one transaction, although they do not in terms refer to each other, if in point of fact they are parts of a single transaction.   Bailey v. Railway, 17 Wall., 96–109.

3.   From the deed and contemporaneous written instrument set up in the petition, it appears that said instruments are manifestly incomplete, and do not undertake to set forth the full contract between the parties.   Thomas v. Hammond, 47 Texas, 52; Railway v. Dawson, 62 Texas, 262; Bradley v. Packet Co., 13 Pet., 89; 2 Phil. on Ev., p. 772 (8th Lond. ed.); 4 Wait's Act. and Def., bot. p. 528.

4.   (1)  Where written instruments form only a part of a more comprehensive transaction, all of which was not reduced to writing, parol evidence is admissible to prove such parts of it as were not reduced to writing.

(2)  Parol evidence is admissible to show the character, purpose, and consideration of an instrument.

(3)  The deed and written instrument executed at the time the deed was made show that the entire agreement between the parties was not reduced to writing, and in such case the court correctly received extrinsic evidence to show what the agreement was.  Thomas v. Hammond, 47 Texas, 52; 4 Wait's Act. and Def., 528.

COLLARD, JUDGE, *Section A.*—Viewing this case from the standpoint of the appellee, who was the plaintiff below, it may be stated as follows:

Plaintiff owned about 1350 acres of land in Collin County. Defendant's railway ran through a part of the land, and in March, 1886, plaintiff conveyed to the company a right of way where the road was to run in consideration of $1 and the enhanced value to accrue to the land.

Expecting to still further increase the value of his land, which was all in one body, plaintiff was desirous of having the company locate a depot and town on the survey, and for this purpose he offered to donate to the company 22 acres more of the same. The citizens of a small town in the neighborhood were also bidding for the depot. On the 2d day of June, 1886, one Colonel Wylie, who was agent for the company to secure right of way along its route, came to see the plaintiff in the interest of the company in reference to the depot and the land donation. While the matter was being discussed Wylie produced a telegram from Snyder, the company's general manager, saying that if plaintiff would not give 25 acres of land the company would not locate its depot on his land. Plaintiff offered to donate the 25 acres, but Wylie demanded 22 acres of plaintiff's survey at a designated place and three acres of land belonging to one Montgomery, adjoining, for convenience in grading. The negotiations resulted in a verbal agreement by which defendant was to locate its depot on the 22 acres at or near station 1674, between stations 1670 and 1678, for which plaintiff was to donate to the company the 22 acres and to secure the three acres on the Montgomery land at his own cost. He gave Wylie $120 to tender Montgomery for the part of his land required.

The company needed about 62 acres more of plaintiff's land, and afterward offered him $2080 for the same, which he agreed to, and on the 21st day of June, 1886, Wylie, acting for the company, drew up a deed for the 22 acres and the 62 acres, stating the consideration to be $2080 for the entire 84 acres (about that quantity), omitting the facts of donation of the 22 acres and the agreement to locate the depot on the same, Wylie explaining that the company wished to avoid an accumulation of deeds. Plaintiff called Wylie's attention to the fact that the deed did not mention the depot, and Wylie replied, "that was all settled, and he would put that in another instrument." The other instrument was prepared by Wylie in writing, and is as follows:

"*The State of Texas, County of Collin.*—Know all men by these presents, that J. E. Jones, of said county and State, in consideration of the purchase of land from me for the location of a town site and the location of a depot at a point between stations 1670x00 and 1678 on the located line of the Gulf, Colorado & Santa Fe Railway running northeast to Red River, via Farmersville, I do hereby agree and bind myself, my heirs and legal representatives, to secure and pay for 100 feet of right of way on the land of J. L. Montgomery, from 1670x00 to 1657x00,

in order to secure grade for depot purposes without delay. In order that the said company shall not be in any way damaged by delay in construction, I further agree and bind myself to pay said railway company, at its office in Galveston, any and all damages that the said company shall sustain by such delay that may be occasioned by me in failing to procure said right of way by legal process or otherwise. In witness whereof, witness my hand this 21st day of June, 1886, in the presence of the subscribing witnesses.          "J. E. Jones.
    "J. S. Rike.
    "L. E. Bumpass."

The deed and the foregoing instrument in writing were both executed and delivered to Wylie at the same time and sent by him to the company, he at the time paying plaintiff the stipulated consideration expressed in the deed, $2080. Plaintiff, according to the contract, had the three acres of Montgomery's land condemned for the use of the company at a cost paid by him of $220. The company did not locate the depot on the 22 acres, but on other 11 acres bought by them from Montgomery. Had the company located the depot where plaintiff claimed it should be, at station 1674, or between stations 1670 and 1678, his other land would have been increased in value $3000 or $4000.

Plaintiff brought this suit against the company, setting up the foregoing facts, and that the true consideration was not stated in the deed and not fully stated in the written instrument. He prayed for cancellation of the deed to the 22 acres, damages to his other land by having it left in bad shape by carving out the land deeded to defendant, the amount paid by him for the Montgomery three acres of land, and for damages to the unsold part of his 1350 acres of land—that is, the difference in its value as now situated and the value in case defendant had located its depot according to the contract. He also alleged that Wylie was fully authorized to make the contract to locate the depot, and that the company with full knowledge of the facts ratified the same. He set up fraud of the company through its authorized agent in representing to him that the depot would be located as stated, by which he was deceived and induced to give the 22 acres of his own land and procure the Montgomery three acres, which he would not have done had he known the company would not put the depot on his land.

The case as made by defendant's evidence was that Wylie was only authorized to procure right of way for the road, and had no authority to contract for the location of the depot, and that he did not do so; that the company paid the consideration as stated in the deed without any knowledge of the alleged acts or promises of Wylie. Defendant relied upon the deed and the contract in writing, the terms of which could not be changed by parol, and which in fact stated the only agreement of the parties.

The charge of the court submitted to the jury the issue as to whether or not the contract to locate the depot as alleged by plaintiff was made by defendant or its lawfully authorized agent, and if made by an agent not authorized, whether the company ratified it with knowledge of the facts; and they were instructed that if they should find for plaintiff on these issues, that defendant failed to so locate its depot, and that plaintiff's adjacent land would have been worth more in case defendant had complied with its contract than it was with the depot as actually located, they should find for plaintiff as damages the increase in such value.

The court also instructed the jury as follows: "If you find for plaintiff, you will not allow any sum to him as compensation for any land he may have conveyed to defendant, or for any sum he may have paid for it to Montgomery, as the consideration for the contract to locate the depot as aforesaid, but the measure of his damages would be restricted to such sum as will fairly compensate him for the increased value of his land, if any, that would have resulted had the depot been located in compliance with the agreement, and you will not regard any evidence admitted before you as to the value of the 22 acres which plaintiff claims to have conveyed to defendant as the consideration of said contract in so far as it bears upon the measure of damages, if any."

The issues of fraud and misrepresentation were not submitted to the jury. No objection was or is made to the charge. There was a verdict and judgment for plaintiff for $3000, from which defendant has appealed.

Appellant's first assignment of error is that the court erred in overruling defendant's first special exception, viz.: "To all that portion of plaintiff's third amended original petition which alleges another consideration for the sale of the $83\frac{20}{100}$ acres of land than the consideration expressed in the deed itself; because plaintiff alleges no accident, fraud, or mistake in the execution or delivery of the deed; and because it clearly appears from the plaintiff's allegations that he was fully cognizant of the exact wording and framing of the deed of conveyance; that he and defendant's agent, W. D. Wylie, clearly understood the exact language and meaning of the deed, but agreed between themselves for purpose of convenience to interpret it differently from its plain and unambiguous meaning; and for further reason under this special exception, defendant says the contract as set out in plaintiff's said petition and alleged as contemporaneous and as a part of said contract of sale does not imply that the location of defendant's depot was any part of the consideration for conveyance of said land."

The general rule is well understood, that a parol agreement can not be engrafted upon a written contract clear in its terms, in the absence of fraud, accident, or mistake. Bruner Bros. v. Strong, 61 Texas, 557;

Railway v. Pfeuffer, 56 Texas, 67; Railway v. Garrett, 52 Texas, 137. The exceptions to the rule are as familiar as the rule itself, viz., that a deed absolute on its face may be shown to be a mortgage or a trust, or that the consideration in a deed is not properly stated. Gibson v. Fifer, 21 Texas, 261; Railway v. Pfeuffer, 56 Texas, 66.

But in the case of Railway v. Garrett, 52 Texas, 137, where the deed to the railway company for right of way recited a consideration of $1 paid, "and the further consideration that the said railway company will locate its said railway over my lands situated in Marion County," it was held by our Supreme Court that an additional consideration that the company was to erect its depot on the grantor's land could not be proved in the absence of fraud, accident, or mistake. The court say· "As this deed was executed by plaintiff and accepted by defendant, this recital is more than a bare receipt of the payment of the purchase money; it is also the written evidence of a contract between the parties that the plaintiff would grant the right of way and that the defendant would construct its road over the same."

The decision seems to hold that a parol undertaking on the part of the company to establish a depot on the grantor's land, made contemporaneously with the deed and not expressed therein, could not be established in the absence of fraud, because it would engraft upon the deed by parol conditions not expressed therein. Fraud, of course, would vitiate any transaction, however solemnly it may have been executed; but in this case the court below ignored the allegations and evidence of fraud on the part of the company and its agent, and submitted the case to the jury upon other issues not dependent upon the alleged fraud; and hence the case must now be considered as if there was no attempt to allege or prove fraud. We must take the allegations and the evidence stripped of fraud, and in such case it is not necessary to decide whether the allegations of fraud are sufficient or not—that is, if our conclusion is correct upon another branch of the case.

It is clearly to be inferred from the instrument of writing executed at the same time the deed was executed that these instruments did not evidence the entire contract or all the contracts entered into between the parties. It is apparent from the written instrument that there was some obligation on the part of the company to locate its depot and a town site on some of the land obtained from plaintiff, or at least between sections 1670 and 1678 on the line of the road, which would be on the land conveyed by plaintiff. The instrument recites: "In consideration of the purchase of land from me for the location of a town site and the location of a depot at a point between stations 1670 and 1678 on the located line of the Gulf, Colorado & Santa Fe Railway, running northeast to Red River," etc. Defendant claims the Montgomery three acres under this agreement. If the language quoted does

not bind the company to place its depot at a point between the sections named, it does indicate that there is some understood agreement between it and Jones that required it to do so.   The contract in writing was not made merely because the company had purchased land of Jones, but purchased for the purpose of locating a town site and a depot thereon.   The agreement indicated was not required to be in writing so far as the company's obligation was concerned; it might have been made by parol.   The surrounding facts established by plaintiff show definitely what the agreement was and upon what consideration the company obligated itself.   If the written instrument itself and the undertakings of Jones therein, stated a sufficient consideration to bind defendant, none other need be shown to maintain this action.   The writer is of opinion, however, that the writing was not intended to do this.   It does nothing more than to refer to the contract to locate the depot, to recognize it without giving its details as a predicate or consideration for the undertakings of Jones.   We think that the facts alleged by plaintiff setting up the written instrument, the contract of defendant company to locate its depot at the point named, the terms and consideration of the contract, the same being a distinct obligation recognized but not attempted to be defined in the writings between the parties, were properly alleged, and that in such case it was not necessary to allege fraud.   Thomas v. Hammond, 47 Texas, 52.

It is not necessary to consider every question raised as to the admissibility of evidence tending to establish the foregoing allegations. Such evidence though in parol would be admissible.

The second assignment of error is as follows:   "The court erred, as set out in defendant's bill of exceptions 1, 2, 3, 4, 5, and 7, and as incorporated in defendant's motion for new trial, in permitting plaintiff and his witnesses to testify over objection of defendant as to conversations and parol agreements between W. D. Wylie and plaintiff previous to the final contract entered into, and which was evidenced by the deed to the $83\frac{20}{100}$ acres and the alleged contemporaneous written instrument; because the deed and said written instrument, covering as they did all the matters in controversy, would represent the final conclusion of the parties irrespective of mere conversations or verbal agreements made or entered into many weeks beforehand; and because further, the alleged silent or verbal understanding as to gift of 22 acres of land was contradictory to the plain recitals of the deed, and the alleged verbal understanding with respect to location of station at 1674 was contradictory of the written contract, and said W. D. Wylie had no authority as right of way agent or otherwise to bind defendant as to location of station at said point or any other point.   Defendant, for further reason under this assignment, upon the question of ratification of the verbal acts or representations of said Wylie with respect to depot location, says there was no evidence as to defendant's knowledge

thereof or action upon the same, but the evidence was, defendant relied only upon the plain, unambiguous recitals in the deed to the $83\frac{20}{100}$ acres, and the written contract alleged as contemporaneous."

The greater part of this assignment has been disposed of by the conclusion reached above upon the sufficiency of the allegations in the petition. The questions as to Wylie's authority to bind defendant by an agreement to locate the depot, and that of proof to support ratification must be noticed. The evidence adduced by defendant was positive that Wylie had no such authority, but there was evidence to the contrary showing that he had, or at least used such power with the consent of the company, and that he had special power in this particular case.

Pickett, employed under Wylie to secure the right of way, says: "I do not know that Colonel Wylie had authority to select depot grounds. I procured such land for the right of way and for depot grounds as he ordered me to get. I know something of the defendant's obtaining depot grounds at Wylie. I bought for defendant under Colonel Wylie's instructions 110 acres of land for depot purposes at that place, and the depot was afterward established on the land. Colonel Wylie was the main right of way agent from Dallas to Paris." It was proved that he procured the deed and paid the purchase money for the depot at Sachse, but in this case the engineer had previously laid off the town.

Rike, a witness to the "instrument in writing," testified that Wylie "seemed to be engaged in locating depots. I know about the location of the depot at Merit. Colonel Wylie and myself went up there to see some men who lived in Merit and some who lived in Hunt County, and the different men were there and were talking to him about locating the depot. At that time Wylie made a proposition to Dr. Murchison about getting the right of way, and if they would do as he wanted Merit would get the depot." It was shown that he conducted the negotiations for the company in the rivalry for the depot between old Copeville and the place finally selected.

Pickett testified, that he was present on the 2d day of June when Jones and Wylie were negotiating about the 22 or 25 acres of land. He says: "In this conversation Jones agreed to give the company 25 acres of his land, but the company required some of Montgomery's land. Wylie then said that the company wanted 22 acres off Jones' land and three acres off Montgomery's. Jones then agreed to give the company 22 acres and to furnish the money to pay for the Montgomery three acres of land. The company was to place the depot on the land of Jones. While under a shade tree talking about the matter, a telegram to Wylie was produced. Wylie read the telegram, and said it was from Colonel Snyder, the general manager of the road, and stated that he (Snyder) stated in the telegram that if Jones did not give the

25 acres they would not locate the depot on his land, but would run from Farmersville to Wylie. I read the telegram myself, and am satisfied that it was signed by Webster Snyder. Jones then gave Wylie $120 or $125 to procure the land from Montgomery. We were then sitting where the railway crosses the dirt road on Jones' land, and it was said that the depot·should be placed at that point 75 feet south of where we were sitting." On cross-examination he stated further: "I said I was positive that the telegram was signed by Webster Snyder. It seemed to me that the object of the telegram was to hurry up Jones in making the contract. It was the business of the engineers to survey the depot ground." The evidence as to contents of this telegram was objected to because it was not the best evidence, and a bill of exceptions taken; but the question is not raised by any assignment of error, appellant relying upon the inadequacy of the proof. Wylie emphatically denied that he had authority to select depot grounds; said he accepted the deed for the 84 acres just as it was written; had no authority to accept a conditional deed, and told Jones so. He produced what special authority he said he had—two telegrams from Snyder, as follows: "Your yesterday's letter here. Buy the 100 acres at Copeville, $25 per acre, if you think prospects warrant." And the other: "Buy the Copeville 100 acres at $25. Do the best you can with the Merit people." Both telegrams were addressed to Wylie, at Dallas.

Wylie testified: "If I stated to Howard Pickett that I had received a telegram from Mr. Snyder notifying me that I must not make a deal with Jones till he gave 25 acres of land, it unquestionably must be so. I don't remember any such thing. If I received such a telegram I don't know where it is. Jones gave me money with which to make a tender to Montgomery for suitable grounds. I told Jones that the location must be dependent upon grade, and that the grade on his land was such that we would have to run back on Montgomery." He says further: "I never had anything to do with exact location of depot. The engineers invariably did the locating."

On the 2d day of June, the day on which plaintiff contends that the agreement was made to locate the depot on his 22 acres of land, Wylie wrote the following letter to Hill, one of defendant's engineers, which was handed to Jones to deliver to Hill, and plaintiff testifies he did deliver it as requested, and that Hill at once handed him back the letter:

"FARMERSVILLE, Texas, June 2.

"COLONEL HILL: I am sorry I missed you this morning. If you can get time this week, Colonel, I would be obliged if you will run out the depot grounds at Jones' place. Our contract with Mr. Jones is that we get 25 acres of land, which includes about three acres in Montgomery's land from station 1670 Jones' land back to station 1657, which gives us the 25 acres contended for from station 1670 to 1688, 316 feet

on each side exclusive of the right of way, and the 13 stations on Montgomery of additional 100 feet would make the 25 acres.    I would like at least to have the 25 acres run in order to get the deed made out.    If you think of any better way to lay it out, do so, as I only want the field notes to put into the deed.    I will return here by next Tuesday, and will hunt you up.    Sincerely yours,    .

"W. D. Wylie, R. Way Agt. G. C. & S. F.

"P. S.—I was too late for church on Sunday, and made satisfactory apologies."

Webster Snyder's testimony denied that Wylie had any authority to locate depots.    He says: "Wylie did not locate any stations on defendant's line. · The stations were located by the assistant chief engineer and approved by me.    Colonel Wylie had nothing whatever to do with the depot grounds except to buy them after they were located if instructed to do so.    He has under instructions from me purchased townsites at several places, but he never had authority to include any obligation of any character in the deed or to make any supplemental outside agreement in addition thereto.    Wylie's relations toward the right of way was that of advising and assisting to the citizens' committee. The company had an agreement with Mr. Sachse prior to Wylie's employment to receive from him free right of way and depot grounds. Wylie, after his employment, was sent to close the transaction and get the papers in shape."

The evidence need not be further recited.    Enough of it has been stated to put us in possession of the most important facts, and to show that the jury may have correctly construed it in finding that Wylie had authority to locate the depot as agreed with Jones.    The telegram from Snyder is the most direct evidence of special authority in this particular case, and would of itself support the finding.    Other evidence tends to show that he was recognized by the company as its agent with such power, and was permitted by it to exercise such power.    Persons so dealing with him might do so with confidence that he was duly authorized.    Anyhow, it is safe to conclude that he was specially authorized in this case.

As to ratification by the company, with knowledge of the facts, we think the evidence sufficient to show it.    Snyder must have known of his own telegram to Wylie requiring Jones to give 25 acres of land to secure the depot; the written instrument executed at the time of the deed gave notice of the fact.    It was sent to the general manager with the deed about the time it was executed, and the copy of it used in evidence was made and sent to Jones by Mr. Davis, the company's secretary at Galveston.    The company was charged with the knowledge of it.    The first material hauled by defendant to build the depot was unloaded near 1674, but was afterward moved onto the Montgomery land.

We do not think there was error if the jury based their verdict upon a ratification.

We are asked to reverse the judgment because the verdict was excessive on the question of damages. Plaintiff owned 1380 acres of land in a body, including the land conveyed to defendant, and he testified, that "if the company had located its depot where it had agreed, my tract of land would have been worth three or four dollars per acre more than it is now." E. E. Blount testified to the same fact. Bowen testified that it would have been worth four or five dollars per acre more, and that "if the depot had been located on the edge of the land of the plaintiff or at station 1670 I would still say that the remainder of the land of plaintiff would have been worth $5 per acre more than it is now worth." While defendant's evidence on this point shows that the damage was very little or nothing, it will be seen that there is nothing more than a conflict of evidence, in which case it has often been decided that an appellate court can not interfere, the jury having decided the question and the trial judge having overruled the motion for a new trial.

On the trial John Church, Esq., one of plaintiff's attorneys, was permitted to testify over objections of defendant: "I knew Waters S. Davis of Galveston. He was secretary of defendant company. His office was in Galveston. I presented him with a petition for change of name of depot at Copeville. He referred me to Colonel Snyder, and upon going to Snyder he referred me to Colonel Wylie. Wylie reported on it."

The court in approving the bill of exceptions to the evidence states that the evidence was only admitted as bearing upon the question of Wylie's agency. It was a slight circumstance, but for the purpose named it was admissible for what it was worth.

Finding no error in the rulings of the court as assigned, we conclude the judgment of the court below should be affirmed.

*Affirmed.*

Adopted November 10, 1891.

A motion for rehearing was refused.