## AMERICAN COTTON COMPANY ET AL. v. W. A. COLLIER.

### Decided June 24, 1902.

**1.—Cancellation—Fraud—Parties—Conspiracy.**

Where an action to cancel certain contracts and deeds made in pursuance thereof was brought against the principal defendant corporation and also against a junior branch corporation, and against the officers of such latter corporation, the petition alleging a conspiracy between all the parties and fraud in the procurement of the contracts and deeds, such latter parties were properly joined in the action.

**2.—Same—False Representations.**

Representations as to the quality and capacity of the new round-bale cotton presses, the merchantable quality of the cotton, as pressed by the new system, the saving to be made in the reduction of freight rates, and that the new process had passed the experimental state, purporting to be allegations of fact

within the knowledge of the party making them, and upon which plaintiff relied, were not mere expressions of opinion, but statements of existing facts.

### 3.—Same—Assurances as to Future Matters.

If, however, such representations had reference to what defendants would do in the future, and were the inducement for the execution by plaintiff of the contract, he could avoid it, if they were false, and defendants knew at the time that they would not be performed.

### 4.—Same—Fraud—Parol Evidence—Antecedent Statements.

Where the action was to cancel certain contracts for fraud in obtaining them, evidence of antecedent statements made to induce their execution, was admissible to show the fraud, and could not be excluded as contradicting or varying the subsequent written contracts.

### 5.—Same—Fraud—Ratification.

Evidence held to warrant a finding that the plaintiff did not ratify and confirm certain contracts after a knowledge of fraud in their procurement.

### 6.—Same—Ratification—Pleading and Charge.

Where defendants pleaded that plaintiffs had, after the execution of the first and of the second contracts, ratified and confirmed said contracts, a charge which followed the pleadings in submitting the issue of ratification was not erroneous on the ground that if the plaintiff ratified the first contract he could not recover, even though he had not ratified the second one.

### 7.—Same—Evidence Too Remote.

In an action involving false representations as to the merits of the round cotton bale process, evidence of the status and benefits of the process at the time of the trial, five years after the representations, and of what it now saved to the farmers, and of how many round-bale presses were now in the country, was properly excluded, where the evidence showed that at the time of the trial many improvements had been made in the presses and system since the representations.

### 8.—Same—Verdict—Certainty.

Where, in an action to cancel certain contracts and deeds made in pursuance thereof, there was a verdict for plaintiff, except as to a designated block, as described in the petition and one of the deeds in evidence, such verdict was sufficient to support the judgment, since by the description set forth in the pleadings the property could be fully identified.

### 9.—Burden of Proof—Charge.

Where the charge contains no distinct instruction that the burden of proof is on plaintiff, yet, when considered as a whole, makes it clearly appear that the burden is on plaintiff to establish by evidence the facts on which he seeks to recover, it is sufficient in this respect.

Appeal from the District Court of Hill County. Tried below before Hon. J. M. Hall.

*Eugene Williams* and *Vaughn & Works,* for appellants.

*Clark & Bollinger* and *A. P. McKinnon,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—W. A. Collier, appellee, as plaintiff below, filed his bill on the 7th day of July, 1896, in the District Court of Hill County, against the American Cotton Company as the real party defendant, joining the American Cotton Bale Improvement Company, the Hubbard City Gin and Compress Company, D. C. Ball, and C. H. Botsford, as codefendants, charging all of the defendants with conspiracy, and alleging that on August 22, 1895, Botsford, as

the agent of the American Cotton Bale Improvement Company, entered into an agreement with appellee under which the Hubbard City Gin and Compress Company was afterwards organized as a junior corporation, and to which junior corporation were conveyed certain lots situated at Hubbard City, Hill County, a portion of the land being that upon which was located a gin plant operated by appellee previous to August 22, 1895, as a square-bale gin plant, the remainder of the land described in the petition being a part of block 86, hereinafter to be especially noted, upon which was located the tank furnishing water to the gin plant.

Appellee in his bill charges that at various times previous to August 22, 1895, the defendants represented that they had made an important discovery in the process of pressing cotton, which was destined to revolutionize the entire business and system of handling and compressing cotton for the market; that by means of said Bessonette system of pressing cotton a saving would be made of about five or six dollars per bale on every bale of cotton that was ginned and compressed by said system; that said system would supplant and destroy in a short time the method of ginning and pressing cotton then employed by plaintiff (meaning the square-bale process), and that by adopting the Bessonette system and changing plaintiff's plant thereto plaintiff would be greatly profited and benefited; that they had thoroughly tested the Bessonette system and experimented with it, and that it could be successfully adopted, and that it had passed beyond the experimental stage and was a known fact to them; that by adopting said system and placing one of their Bessonette presses with plaintiff's plant, it would be able to successfully press all the cotton that would be ginned by the eight gin stands established and operated by plaintiff, and that the cotton when compressed by said system would be more valuable in the market than when compressed according to the old method of compressing employed by plaintiff; that plaintiff would be saved the expense of having to compress cotton after the same had been put up in bales; that great saving would be made in not having to insure said cotton compressed by said Bessonette system; that said cotton would sell for more money in the market per pound than cotton compressed in the customary way employed by plaintiff, and that a sample of said cotton so compressed would excel that of cotton compressed by the method employed by plaintiff.

That by means of said representations, alleged to be false and fraudulent, defendants induced appellee to execute said agreement of August 22, 1895, wherein appellee and said improvement company agreed that the latter would secure a charter organizing the Hubbard City Gin and Compress Company, to be styled the local company, with a capital stock of $10,000, in shares of $100 each, and it was agreed that $4900 of said stock should be subscribed by appellee and paid for by a conveyance to the local company of the said real estate, being the gin plant of appellee, the said $4900 of stock issued to appellee to be held by trustee as collateral security for the payment of a $3000 indebtedness of appellee,

constituting a lien on the Hubbard City gin plant, said stock to be delivered to appellee upon payment of the indebtedness and discharge of all liens against the property; that said Botsford agreed to subscribe for one-fourth of the capital stock of said company.

That said contract of August 22, 1895, further provided that the said improvement company warranted the material in the presses to be furnished by it to be good, and that with proper gin plant and management it would work successfully and pack a cylindrical, merchantable bale of cotton, and that said improvement company would furnish all capital for the purchase at market prices of cotton in the seed to keep the plant running at its full capacity, interest and exchange to be paid by said local company, and all capital so furnished to be charged to said local company.

That in pursuance of said contract he conveyed said property, that his old square-bale presses were disconnected from his gin, that appellee was employed by the local company to assist in managing and running the same, that the new presses were furnished and connected with the gin, and operations were begun about November 1, 1895, and continued until December 23, 1895.

That notwithstanding the representations and contract aforesaid, the press so furnished by said improvement company was a total failure, and would not work successfully, in this: that plaintiff's gins were capable of ginning seventy-five bales of cotton per day, and that said presses would not press exceeding one-half of their capacity; and did not work successfully, for the further reason that it was continually breaking and getting out of repair, necessitating loss of time and expense in its operation at greatly reduced capacity, and that the cotton compressed by it was injured in quality by reason of burning and packing at the center of the bale, and was unmerchantable and could not be sold except at a great loss, and that the press, material, and attachments and condenser furnished by the defendant did not work successfully, for the further reason that there was a great loss and waste in the cotton ginned; that the press and condenser so furnished were not of the standard type of the Bessonette press, as was agreed to be furnished by said improvement company, but were of a different character than that contracted for, and were failures and defective so far as a practical cotton press was concerned, and were not in any respect in compliance with the contract with plaintiff, and did not pack a cylindrical, merchantable bale of cotton, and were useless and worthless machinery.

That he relied implicitly upon all the representations and statements charged to have been made by the defendants and especially those made by the said improvement company, Botsford and Ball, who were officers, promoters and prime movers in the enterprise; that said statements and representations and warranties provided for in the contract were false and fraudulent and made for the purpose of obtaining appellee's property, and that it was solely by said means that appellee was induced to part with title to his property, and that he had received no

consideration whatever for his property, by reason of which certain deeds and conveyances should be canceled and annulled and the contract rescinded, and that he be reinvested with the title and possession of his property.

Appellee followed up the foregoing allegations with a series of charges of violations on the part of the defendants of their contracts of August 22, 1895, among others, that said Ball and Botsford represented, warranted and guaranteed to plaintiff that in the purchase of cotton the defendant Hubbard City Gin and Compress Company should incur no risk whatever on account of the fluctuations in the market; that appellee objected to said feature of the contract at the time it was presented to him, but that he was fully assured by said defendants and the improvement company that cotton would be sold and placed as soon as bought, meaning that future contracts would be sold against the purchase of spot cotton; that about two thousand bales of cotton ginned and compressed at the plant had not been disposed of, but were still on hand (which on the trial was proven to have been utterly false), and that by reason of the failure of the press to work and the failure of the defendants to dispose of the cotton on the days as purchased, and to sell against the future market, and to avoid all risk of fall in prices and speculations in the cotton market, that the improvement company claimed an indebtedness or charge against the Hubbard City Gin and Compress Company of more than $20,000, resulting from losses in the operation of the plant, which defendants had guaranteed should be successfully and properly operated; that the said improvement company obligated itself to erect all necessary buildings for the management of the property and protection of the same, yet had negligently failed to provide storage room for cotton, so that to the cotton bought and accumulated at the plant for the purpose of ginning great and irreparable damage has been sustained, to the extent of several thousand dollars.

Appellee further alleged failure on the part of defendants to comply with their alleged obligations of the contract of August 22, 1895, immaterial to be here stated, as it will be necessary for the court to read carefully the long petition in order to pass upon appellants' general demurrer.

To the original petition appellants and defendants below filed their second amended original answer, in which they demurred generally to the bill of appellee. The demurrer was overruled by the trial court, to which a bill of exceptions was taken. After the general denial special answers were interposed to appellee's bill, as follows: (1) That appellee, Collier, was manager of the Hubbard City Gin and Compress Company upon the ground from the date of its completion until the bringing of his suit, and that if injury resulted to him the same was caused by his own neglect and mismanagement. (2) That after executing the agreement of August 22, 1895, hereinafter to be explained, appellee, by divers acts, ratified and confirmed these contracts, and the appellants were led to advance money and co-operate with appellee in

the conduct of the business, and to pay purchase money upon the property described in his bill; whereby said contracts were ratified and confirmed by appellee. (3) The American Cotton Company claimed by pleading over against appellee the title to the property in controversy, and prayed for damages in the sum of $3000, by reason of appellee's having taken down and removed the machinery of the defendants furnished under the contract of August 22, 1895.

A trial resulted in a verdict and judgment for the plaintiff, and the defendants have appealed. The record testimony consisted of (1) contract of August 22, 1895, between the American Cotton Bale Improvement Company, called the "St. Louis" or "improvement company," by Chas. H. Botsford, vice-president, and plaintiff, W. A. Collier. The material parts of this contract are substantially set out in the petition, and by its terms the Hubbard City Gin and Compress Company was to be chartered and organized with a capital of $10,000, of which the American Cotton Bale Improvement Company was to have fifty-one shares and W. A. Collier forty-nine shares, each share of the face value of $100. (2) Deed from W. A. Collier and wife to the Hubbard City Gin and Compress Company, dated January 30, 1896, conveying the land upon which the gin plant described in the petition was situated. (3) Deed from W. A. Collier and wife to the Hubbard City Gin and Compress Company dated March 4, 1896, conveying part of block 86, upon which the tank was situated. (4) Deed from the Hubbard City Gin and Compress Company to the American Cotton Company conveying both of the above parcels of land, including the houses, improvements, and machinery thereon. The facts sufficiently appear in the opinion.

*Opinion.*—1. Appellants have assigned as error the action of the court in overruling their general demurrer to the plaintiff's petition. It is contended that the court erred for the reason that no cause of action is shown against the Hubbard City Gin and Compress Company, D. C. Ball, and C. H. Botsford, and hence they were not necessary or proper parties to the suit.' The petition charges all of the defendants with a conspiracy to deprive plaintiff of his property. It charges that Botsford and Ball were officers of and represented the American Cotton Bale Improvement Company, and that Botsford, as the agent of said company, made certain false statements and representations to plaintiff to induce him to sign the contract of August 22, 1895. It alleges fraud in the procurement of the contract, and further alleges that there was no consideration for the deeds executed by plaintiff to the Hubbard City Gin and Compress Company, and sought to have said deeds canceled. The parties named were proper parties to the suit and the court did not err in so holding. Silberberg v. Pierson, 75 Texas, 289; Berry v. House, 1 Texas Civ. App., 562. Nor was there error in overruling the demurrer on the ground that the representations alleged by plaintiff to have been the inducement moving him to execute the contract of August 22, 1895,

and the deeds of January 20 and March 4, 1896, were opinions and expressions of future transactions. The petition alleged representations made to the appellee by defendants as to the quality and capacity of the new presses, the merchantable quality of the cotton to be pressed by the new system, the saving to be made in the reduction of freight rates, the process of pressing the cotton by the new method had passed the experimental stage, and other allegations of facts purporting to be within the knowledge of the party making them, and upon which plaintiff relied and which was the inducement for him to enter into the contract sought to be annulled. The representations set out in the petition and which are alleged to be the inducement for entering into the contract are stated as facts then existing upon which plaintiff was authorized to rely. If, however, the representations had reference to what defendants would do in the future and were the inducement for the execution by plaintiff of the contract, he could avoid the contract if such representations were false and at the time they were made defendants knew the same would not be performed. Henderson v. Railway, 17 Texas, 560; Greenwood v. Pierce, 58 Texas, 130; Railway v. Jones, 82 Texas, 156; Railway v. Titterington, 84 Texas, 215; Railway v. Pittman, 4 Texas Civ. App., 172.

2. It is contended under the second and fourth assignments of error that the court erred in refusing to set aside the verdict and judgment because the paper title of the defendant the American Cotton Company vested title in it to all of the property in controversy and the evidence failed to show any fraud on the part of any one of the defendants. There was a sharp conflict in the evidence on nearly all of the material issues. There was evidence tending to support each material allegation in the petition sufficient to justify the jury in returning the verdict they did. At the time of the making of the contract of August 22, 1895, the system for pressing cotton in a round bale was new. The plaintiff was not informed as to the degree of perfection the system had reached or as to whether it was a success. The evidence clearly shows that it was represented to plaintiff that the Bessonette system had been thoroughly experimented with and that it could be successfully adopted, and that it had passed beyond the experimental stage and was a known fact, and that it would be the means of saving five or six dollars on each bale of cotton pressed by that system. Anderson, the manager of one of the divisions of the defendant, testified that the bale made by the round-bale system in 1895 had no advantage over the square bale. The cost was practically the same, and in substance his testimony is that there was no saving, and there was testimony that it had not passed the experimental stage, and that the system was not perfected until some time thereafter. There was evidence that there were mechanical defects in the press which prevented the same from performing its work as it should. It was shown that plaintiff had not in fact received any stock in the Hubbard City Gin and Compress Company or the American Cotton Company. The $4900 in stock which he should have received in the former

company was held by that company to secure it against the vendor's lien on that part of block 86 conveyed by Collier and wife to said company on March 4, 1896. This lien was paid off by the American Cotton Company, and it seems that company holds the stock to which plaintiff was entitled asserting a right thereto by reason of such payment. We conclude that the testimony was amply sufficient to support the verdict and judgment, and the above contention of appellant is without merit.

3. In appellants' fifth, sixth, and seventh assignments of error it is contended that the court erred in admitting in evidence the testimony of J. A. Collier, that: "I remember being present when my father and Botsford had a conversation. I remember a statement Mr. Botsford made in connection with the new business. He said, 'We have a new thing, and it has been tested, and all we have to do when we get the plant is to go to work.' He says, 'It is a good thing, and it is a go, and there will be no experiment about it. All we have to do is to put it up and go to making money.' He said that 'He would make from three to seven dollars a bale on it; that this saving would be made in various ways, from bagging and ties, freight rates, no commissions to take out, no middlemen's profits; that he would get a better price in the market for cotton over other cotton; that we would save compress fees; that the outfit he was putting in would make the saving for the business if it was entered into.' That these statements were made before any contract was signed." It is insisted that this evidence was inadmissible, because parol evidence of antecedent or contemporaneous conversation and representations is inadmissible to contradict, take from, or very the terms of a complete written instrument. The court did not err in overruling the objection to the testimony. The evidence was not offered to very the terms of the contract. It was admissible to show that the plaintiff was induced to make the contract through fraudulent representations made to him by defendant's agents which they knew or ought to have known were not true, and which were made for the purpose of deceiving him.

4. It is contended by appellants in their ninth, tenth, eleventh, and twelfth assignments of error that appellee, having been fully informed of the mechanical operations of the machinery prior to the making of his deeds of January 20 and March 4, 1896, and, on April 22, 1896, informed that the Hubbard City Gin and Compress Company was indebted to the American Cotton Bale Improvement Company in the sum of about $20,000, and having voted in a meeting of the stockholders of the Hubbard City Gin and Compress Company held on April 22, 1896, to convey the property in controversy to the American Cotton Company and to take stock in the American Cotton Company in lieu of his stock in the Hubbard City Gin and Compress Company, and thereafter, by letter dated May 25, 1896, indicated his willingness and desire to continue operating the plant at Hubbard City under the round-bale system, must be held to have ratified his contract of August 22, 1895, and his two deeds above mentioned. After the making of the

contract of August 22, 1895, Collier continued to operate the square-bale plant until November 1, 1895, when it was changed and the round-bale press was installed in his gin plant. The plaintiff operated this system until December 23, 1895, when it was shut down. It was represented to plaintiff by Botsford that, as a part of the plans of operating the plant when first established, they would buy cotton in the seed from the farmers. To this plaintiff objected on the ground that he did not want to buy cotton and hold it for speculation. He was told that they would take no chances on the fluctuations of the market in cotton; that they would hedge against the purchase of cotton by selling against the cotton as fast as it was bought by him. That he proceeded to buy cotton in the seed before the press was put in and ready for operation. No sales were made by defendants against the cotton so bought. There was a meeting of the stockholders of the Hubbard City Gin and Compress Company held at Waco on April 22, 1896. Plaintiff was present. It was there proposed to transfer the property of the Hubbard City Gin and Compress Company to the American Cotton Company. Plaintiff objected. He complained that the press did not work properly. He was told that defendants would carry it over his head. He was told that they would put in a new press for the next year, improved and different entirely from the old one. Plaintiff was shown a statement showing a loss of $20,000 on the sales of cotton for the season of 1895. The statement did not give any items, but was simply a general statement giving the result of cotton sales. After this plaintiff voted for the transfer of the property to the American Cotton Company. The evidence shows that at that time Collier did not know of the business methods of defendants; he had no knowledge of the business dealings for the year 1895 except the general statement that there had been a loss of over $20,000 on cotton sales. On May 25, 1896, J. A. Collier, for his father, W. A. Collier, wrote a letter to D. C. Ball, president of the American Cotton Company, as follows: "While we have the utmost confidence in the business, we are at a loss as to whether it is going to be worth anything to us or not. You see we are absolutely in the dark as to why the work is not going on. It is true you have been very kind to us in writing us promptly, and while we have been encouraged much at times, it seems now that we are burning daylight. Understand this is a matter of living with us. Accumulation is far beyond our expectation. So, you see, we have intrusted into the hands of the company our only means of support. Hence it does not seem asking too much that you post us on the business of the company just as far as we are dependent on the company. Things that do not concern us, we do not care anything about. But we should like to know why the company's meeting has been deferred from time to time and if the business is in danger by any important question that has not been settled, it does not seem out of place for us to know it, for I am sure that if the business is as represented to us it is greatly to our interest to stick to it, which

we intend to do until we are made to believe otherwise. Hoping you will favor us with encouraging information soon, I am, yours truly, J. A. Collier."

This letter was written in behalf of the appellee. The reply of appellant, D. C. Ball, to the above letter, of date May 28, 1896, among other things contained encouraging information concerning the objects, prospects, and purposes of the new scheme. That their foundry at Chicago was actively at work; important changes had been made in the handling. They expected to run the Hubbard City plant full capacity and put in new plants, etc., and stated further, "I do not think you are making a mistake in maintaining your confidence in the round bale, as we do. (Signed) The American Cotton Bale Imp. Co., D. C. Ball, President." Ball, as president of the American Cotton Bale Improvement Company, on June 20, 1896, among other things, wrote appellee as follows: "After quite a delay, which I regret very much, I finally have been able to get at preparing the papers you want, and we send you to-day by express all those papers on the operation of the business for the past season, which, taken with the records you have there, will enable you to go through and locate everything with regard to the business. Anything, however, that you do not get from these and that you want further in the way of information and explanation, please let us know and we will be glad to supply it to you." And further, "I am sorry to have delayed you so long in the getting of these papers, but you understand what an amount of hard work I have had upon me," etc. "We will in ample time shape up everything at the plants * * * and put up sufficient additional plants to enable us to do a large business," etc. "It does no good, but on the contrary usually harm, to recall past mistakes in the way of blame, so we must do none of that." "As to the question of the cotton being merchantable, there is no question about it. As a matter of fact, there was in proportion a far bigger demand for the round bale cotton than for any other sort." "I took the stand from the start that we should protect your interest; that you had gone into this thing in good faith with us, and while we had kept good faith with you in every way, it was a matter of mutual loss." There is evidence that plaintiff had attempted to get information as to the business for 1895, but had failed until he received the statements contained in the letter from Ball, on June 20th. It was then for the first time that plaintiff discovered the condition of the business. He promptly instituted this suit to set aside the transaction. The court instructed the jury to the effect that if they believed from the evidence that W. A. Collier, with full knowledge of the facts and wrongs done him, if any, after the execution of the contract of August 22, 1895, and the contract of April 22, 1896, ratified and confirmed said contracts, then they should find for the defendants. The effect of their finding is that Collier did not ratify said contracts, and the evidence is sufficient to support their finding in this respect.

5. The above clause of the court's charge on ratification, it is con-

tended, is erroneous, in that it is insisted that if Collier ratified the contract of August 22, 1895, and the deeds of January 30 and March 4, 1896, he could not recover even though he may not have ratified the contract of April 22, 1896. The contention is without merit. The defendants' answer, in which they plead ratification, alleged "that after the execution of the contract of August 22, 1895, and after the execution of the contract of the 22d day of April, 1896, the said Collier, by divers and sundry acts, ratified and confirmed said contracts," etc. The charge of the court followed the pleading and clearly submitted the issue therein presented.

6. Appellants' sixteenth, seventeenth, and eighteenth assignments of error complain of the action of the court in excluding certain testimony offered by the defendant. It was sought to prove by the witness, A. T. Rose, the manner in which the round bale was at the present time presented to the ginners and what claims were made for it. The objection was made that it was not shown that the present press was like the one that Collier had. The case was tried in October, 1900, and the question had reference to that time. The transaction out of which this suit arose took place in 1895, and the undisputed evidence is that at the time of the trial there had been improvements made in the press and system since 1895. There was no error in sustaining the objection to the testimony. The witness, T. A. Bolt, was asked what saving, if any, was there to the farmers in handling cotton in the round bale compared with the square bale. This testimony was not admissible for the same reason, and for the further reason that it was immaterial. Collier was asked on cross-examination: "Do you know how many of these round-bale presses there are all over the country?" The question was objected to as immaterial and the objection was sustained. In this there was no error.

7. It is contended that the verdict is insufficient to support the judgment, in that it depends upon evidence to make it certain, and refers to a deed dated March 4, 1896, for description of that property in block 86 found for the American Cotton Company, and no such deed is described in the pleadings and no reference is made to the pleadings. The verdict was as follows: "We the jury find for the plaintiff except as to block 86, as described in deed dated 4th day of March, 1896, and as to said part of block 86, we find for the defendant the American Cotton Company." The evidence shows that there was a vendor's lien for $3000 against W. A. Collier for that part of block 86 conveyed by him to the Hubbard City Gin and Compress Company upon which the tank was located. The lien was paid off by the defendant the American Cotton Company, and represented the market value of the property. The court instructed the jury as follows: "You are instructed that the proof shows that the consideration for part of block 86 described in the deed from W. A. Collier and wife to the Hubbard City Gin and Compress Company, of date March 4, 1896, was furnished by the American Cotton Bale Improvement Company, and for this reason you are

instructed that regardless of the other issues of this case that as to this piece of property to find a verdict for the American Cotton Company." The description of the land in the deed from W. A. Collier and wife to the Hubbard City Gin and Compress Company read in evidence, purporting to convey part of block 86, is substantially the same description as the one given in the petition and fully identifies the property as being the same as is set out in the pleading. The judgment follows the description as contained in the petition and in the deed. The verdict was sufficient to support the judgment. Morrison v. Van Bibber, 25 Texas Supp., 153; Wood v. Welder, 42 Texas, 396.

8. It is contended under the twenty-fifth assignment of error that the court erred in its charge in failing to instruct the jury that the burden of proof was upon the plaintiff to establish by a preponderance of evidence the allegations contained in the petition. There was no distinct charge by the court that the burden of proof was on plaintiff, but, considering the charge as a whole, it clearly appears that the burden of proof is upon plaintiff to establish by evidence the facts upon which he sought to recover.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.