# JANUARY, 1929

J. BATTEN, RECEIVER, ET AL. v. W. N. WADDELL.

No. 5027. Decided January 2, 1929.
(12 S. W., 2d Series, 181.)

*Samuels & Brown* and *Gordon & Gordon,* for appellants.

The only term which has to be supported by implication or construction is that Hatfield should have a reasonable time in which to drill the first well. Every other term appears by express statement. And the rule, too well established to be open now for argument, is that "When no time for performance is expressed a reasonable time will be implied by law." Burger v. Ray, 239 S. W., 257. Which implied term allowing a reasonable time, became then as much a part of the contract as the express terms thereof. Cheek v. Metzer, 116 Texas, 356, 291 S. W., 860.

What was in fact a reasonable time is of no moment here. That is a question of fact which could become of importance only in case the time actually taken or allowed was alleged to be unreasonable.

Cantrell v. Garrard (240 S. W., 533), the authority so relied upon by defendant, loses it's force when the situation is faced fairly. That case is authority only for the statement that the essential terms of an oil lease must appear in a contract for it's delivery. That proposition is not debated. In our view the essential terms of the lease *do* appear in the contract in question in this action.

*Byran, Stone, Wade & Agerton,* for appellee.

The lower court did not err in sustaining the appellee's special exception contained in paragraph two of his second amended original answer directed to the plaintiffs' third amended original petition raising the issue of Statute of Frauds, of this State, in that all the essential terms of the lease agreed to be executed and delivered are not contained in said contract. Cantrell v. Garrard, 240 S. W., 533; Anders v. Johnson, 276 S. W., 679.

The lower court did not err in sustaining the appellee's special exception contained in paragraph three of his second amended original answer addressed to the appellants' third amended original petition raising the issue of indefiniteness and uncertainty because all the essential terms of said lease agreed to be conveyed by the contract sued on by the appellants were indefinite and uncertain and therefore said contract was unenforceable. Maynard v. Gilliam, 225 S. W., 818; 6 R. C. L., Page 643, Par. 59; 6 R. C. L., Page 617, Par. 38; East v. Garcia, 295 S. W., 239.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

### STATEMENT OF THE CASE.

Batten, as "Receiver of the Texas-Mexia Drilling Syndicate and B. M. Hatfield", and Hatfield brought suit against Waddell upon averments, inter alia, as follows: (a) February 18, 1922, "said syndicate * * * entered into a contract in writing with the defendant, by which contract the defendant * * * agreed and undertook to execute, acknowledge and deliver in due form to said syndicate a mineral lease including oil, gas, potash and any and all other valuable minerals in or upon a block of 20,000 acres to be selected and designated by said syndicate within 30 days after said 18th day of February, 1922, from and out of a larger body of land situated in Crane County, Texas, and fully described in said contract",—'a true copy of which contract was attached to the petition marked Exhibit A. and made a part thereof'. (b) "Within 30 days after the execution of the contract, Exhibit A, the syndicate selected and designated a block of 20,000 acres" out of said lands. (c) "On or about the 18th day of April, 1922, the syndicate had prepared and tendered to defendant for execution, acknowledgment and delivery by him to it a mineral lease upon the agreed lands substantially in the form provided in said contract Exhibit A" (copy of which "form" was attached to and made a part "of said contract and Exhibit A") "and made demand on defendant that he execute such lease and deliver to said syndicate." (d) Defendant "finally and positively refused to execute and deliver such lease and to abide by the terms of his contract, Exhibit A, and broke and violated said contract." (e) The "syndicate", in rightful anticipation of the performance of said contract by Waddell and his execution of said "lease", incurred expenses and suffered injuries detailed.

The prayer was for recovery of the "damages" named.

"Exhibit A" (omitting certain formal parts) reads as follows:

"That this Memorandum of Agreement, made and entered into by and between W. N. Waddell of Tarrant County, Texas, party of the first part, and the Texas-Mexia Drilling Syndicate, by and through its sole trustee, B. M. Hatfield, party of second part, Witnesseth:

"That, for and in consideration of the covenants and agreements to be done and performed by Party of Second part as hereinafter mentioned, the party of the first part hereby agrees to execute,

acknowledge, and deliver in ·due form to said party of second part, a mineral lease, including oil, gas, potash, and any and all other valuable minerals in or upon a block of twenty thousand acres to be selected and designated by Party of Second part within thirty days after the execution of this contract from and out of the following tracts and parcels of land, lying and situated in Crane County, Texas, to-wit:

"Sections, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, and 18 in Block 23, Public School lands, also Sections 1, 2, 3, 4, 5, 6, 7, and 11, in Block 24, Public School lands, also Sections 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 and 29 in Block 25, Public School Lands, also Section 28, Block 43 T. & P. railroad Grant Constituting in all 49 Sections of Land.

"It being understood that within the boundaries of the land above described first party has sold or leased to other parties a total of Five Sections which, if it be found that the mineral rights thereon have heretofore been disposed of in such transfers, first party shall have the right to except such from the operation of this contract.

"In consideration of the execution and delivery of said lease, which shall be done at the earliest practical moment after the selection has been made by second party, said party of the second part covenants and agrees with party of the first part to drill a test well for oil and other minerals upon said block of twenty thousand acres to a depth of not less than thirty-five hundred (3500) feet, unless the Pennsylvania formation is sooner encountered, or oil and gas in paying quantities is discovered therein at a lesser depth. Operations thereon to be begun within sixty days after the selection and designation of the twenty thousand acres as aforesaid and after party of the first part shall have furnished party of second part with a complete abstract of title to said twenty thousand acres and same has been passed by attorney of party of second part and all errors, if any, corrected by party of first part.

"The form of the lease to be executed on said block of twenty thousand acres shall be what is known as '88-S' form of commercial lease, covering oil, gas, potash, and all other minerals, a copy of which is hereto attached, marked 'Exhibit 1' for identification, and made a part for all purposes hereof.

"The first well drilled on such selected lands shall hold ten thousand acres thereof by payment of one-eighth royalty only: the other ten thousand acres may be held by second party for the full period of the lease by the payment of fifty cents per acre annual rentals, beginning one year after the date of the execution of said lease, pro-

vided that acreage rentals shall cease on four sections selected by second party for each well started on last mentioned ten thousand acres."

The "form" of "lease" referred to, reads as follows:

"This agreement entered into this day for a mineral lease, between Party of the first part, hereinafter called lessor, and Ector-Crane Development Company, party of the second part, hereinafter called lessee. Witnesseth: That said lessor in consideration of One Dollar and other valuable considerations, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, on the part of the lessee, to be kept and performed, has granted, demised, leased and let, and by these presents does grant, lease and let unto the said lessee for the sole and only purposes of mining and operating for oil and gas and other minerals, salts and liquids, and the products and by-products thereof of every description, and especially to include Potash, Coal, Salt, Sulphur, Gypsum, Magnesia, Fullers Earth, and all substances and liquids containing all or any one or more of the same, and all other minerals of whatever description, laying pipe lines: building tanks, power stations, and structures: and all other means of transportation necessary, incident, to the production, saving and taking care of said products: all those certain tracts of land situated in the County of. . . . . . . . . . . ., State of Texas, and described as follows to-wit: . . . . . . . . . . . . . . . . and containing . . . . . . . . . . acres, more or less.

"Lessor hereby grants to lessee without any further consideration to be paid the right and privilege of laying and constructing pipe lines over and under any other lands belonging to the lessee, provided the lessor shall pay all damages to the crops, and fences on said lands.

"It is agreed that this lease shall remain in force for a period of . . . . . . years from this date, and as long thereafter as the minerals, salts, substances and liquids aforesaid or either or any of them are produced on said lands by the lessee in paying quantities, the sufficiency of which to be determined by lessee.

"In consideration of the premises lessee covenants and agrees.

"1st. To deliver to the credit of the lessor free of cost into the pipe line, to which he may connect wells, one-eighth royalty on all oil produced and saved from said land: and to pay to the said lessor for Potash, the sum of fifty cents, per ton: for coal the sum of twenty-five cents per ton: for sulphur, twenty cents per ton: for salt, ten cents per ton, the ton to be used to be that known as the metric ton: and on all other minerals or substances produced an

equal one-tenth part of that produced and saved from said leased premises, to be delivered at the surface.

"2nd. If no well be commenced: or no work of mining, testing, or operating, or developing with tools, implements and machinery sufficient to do such work in a first class manner, be commenced on said land on or before the ......day of ................19.., this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the ............. Bank at ............. or its successors, which shall continue as depository regardless of change in the ownership of said lands, the sum of $............ which shall operate as the rental and cover the privilege of deferring the commencement of such operations for twelve months from said date. In like manner and upon like payments or tenders, the commencement of a well and the commencements of such operation of and for the aforesaid minerals, salts, substances and liquids, or any of them may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"3rd. If said lessor owns a less interest in said above described land than the entire undivided fee simple estate, therein, then the royalties and rentals herein shall be paid the lessor only in proportion which his interest bears to the whole undivided fee.

"4th. Lessee shall have the right to use free of cost, gas, oil and water produced on said land for its operations thereon, except water from the wells of the lessor.

"No such mining or development operations as in this agreement mentioned, shall be nearer than two hundred feet to the house or out houses appurtenent to such house now on such premises, without the written consent of the lessor.

"5th. Lessee shall pay for all damages caused by his operations to growing cultivated crops on said land. Lessee shall also place, in same condition as found, all fences that it may have occasion to damage.

"6th. The lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including any mining and testing machinery in, or under the land of said premises: and also including the right to draw and remove casing.

"7th. In constructing pipe line through said premises, the lessee shall bury said pipe line below plow depth when so requested by lessor.

"8th. Lessee shall pay lessor one hundred dollars each year in advance for the gas from each well where gas is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in principal dwelling house on said land during the time by making his own connection with the well at his own risk and expense.

"9th. Lessee agrees to pay lessor for gas produced on any oil well and used off the premises at the rate of twenty-five ($25.00) dollars per year, for the time during which such gas shall be used, said payments to be made each three months in advance.

"10th. If the estate of either party hereto is assigned, and the privilege of assigning the whole or a part is expressly allowed, the covenants hereof shall extend to either heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed in the event this lease shall be assigned as to a part or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rent due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which the said lessee, or any assignee thereof, shall make due payment of said rental.

"11th. Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor by payment any mortgage, tax or other lien on the above described land in the event of default payment by lessor, and be subrogated to the rights of the holder thereof.

"12th. Lessor agrees to lend to the lessee, the abstract of title to the herein described, property, certified by a responsible abstracter to this date, the same to be examined by the attorney for the lessee and to be used by the lessee during the period of this lease, if lessee so desires. Said lessee agrees, on written request of the lessor, to return said abstract to him, for his use.

"At the expiration of this lease, the lessee agrees to return said abstract to lessor, if said abstract shall be in the possession of the lessee.

"In testimony whereof these presents have been executed this.... day of ............ A. D., 1926."

According to the certificate

"The following special exceptions to plaintiff's petition were by the court sustained, to-wit:

"No. 2. That the contract relied on came within the inhibition of subdivision 4 of article 3995, Rev. Civ. Statutes of 1925, in that neither the contract relied on nor the exhibits attached thereto showed the terms of the lease to be executed.

"No. 3. That the contract as alleged was too indefinite and uncertain as to the terms of the lease to be enforceable."

Plaintiffs "refused to amend their petition and thereupon the court dismissed said suit" at plaintiffs' cost.

Batten and Hatfield duly excepted, gave notice and perfected their appeal and the cause is now pending in the Court of Civil Appeals, Second District.

In the certificate it is said:

"Whether or not the contract which was executed when read in connection with the unfilled blank form of the lease attached thereto was too indefinite and uncertain to create a binding obligation on the part of defendant to execute any character of lease as contended in some of the special exceptions, is a question upon which we have serious doubt, and as we are not entirely agreed, we deem it advisable to certify to your Honorable Court for determination the following questions:

"1. Was the contract too indefinite to serve as a basis for plaintiff's suit in either of the following particulars:

"(a) The absence in the contract of any term of years to be inserted in the blank in that portion of the form of the lease quoted above as the term for which the lease was to continue.

"(b) The failure of the contract to provide how the 10,000 acres to be held by the syndicate by the payment of one-eighth royalty of oil in consideration of the drilling of the first well should be determined.

"(c) The absence of any provision in the contract as to how the remaining 10,000 acres upon which acreage rentals were to be paid should be determined in the event the completion of the first well should be delayed longer than the period of one year after the date of the execution of the lease, even though the drilling thereof should be prosecuted with due diligence.

"2. Did the court err in sustaining special exceptions Nos. 2 and 3, noted above, to plaintiff's petition?"

OPINION.

1.   The "contract" declared upon is not a "comprehensive transaction" of which a part only was reduced to writing comparable to either of those involved in Thomas v. Hammond, 47 Texas, 42, 52, or Gulf C. & S. F. Ry. Co. v. Jones, 82 Texas, 156, 17 S. W., 534. The writing itself is averred to be the "contract",—and this means, of course, that whatever things had been finally agreed upon were merged, for evidence, in the paper.   Hence, pre-existent agreement upon various terms mutually intended to be omitted from the writing then presently signed but to be included in the "lease" as yet to be executed, with predicate for an exception to the parol evidence rule (Thomas v. Hammond and Gulf C. & S. F. Ry. Co. v. Jones), is negatived,—as is predicate for exceptions resting in fraud or mistake.

The "contract in writing" is pleaded in *haec verba* and without qualifying or explanatory averments.   So presented, the "writing" imports, prima facie, lack of agreement in respect to various terms to be stated in the "lease" if, as and when executed and pretermission of agreement thereon.   Thus, there is introduced the anomaly of an agreement to make an agreement of an undisclosed nature in the future.   See, Joseph v. Bostick, Texas Com. App., 27.6 S. W., 672, and cases there cited.

2.   But if the matters particularly mentioned by the Court of Civil Appeals be treated as involving mere ambiguities, there yet remains the fact of lack of averments putting a definite construction on those portions of the "contract" or on the "contract" as a whole. Ingram v. Winters, Texas Civ. App., 102 S. W., 432, 435; Greene Gold-Silver Co. v. Silbert, Texas, Civ. App., 158 S. W., 803; Durkee v. .Cota, 74 Cal., 316, 16 Pac., 5; Johnson v. Kindred St. Bank, 12 N. D., 336, 96 N. W., 588; 4 Ency. Pl. & Pr., 918.

3.   In our opinion the exception called "No. 3" was properly sustained.   If that be true, declination of plaintiffs to amend renders immaterial the other questions propounded.

We recommend that such portion of Question No. 2, certified, as relates to Exception No. 3 be answered "No".

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified.

*C. M. Cureton*, Chief Justice.