SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. ANDREWS.
(No. 7997.)

(Court of Civil Appeals of Texas. Ft. Worth. June 6, 1914.)

1. TELEGRAPHS AND TELEPHONES (§ 66*) — FAILURE TO TRANSMIT TELEPHONE CALL —DAMAGES—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for failure to transmit a telephone call, whereby attempt was made to notify plaintiff of the expected death of his sister, who died and was buried the next day, held insufficient to show whether the train, on which plaintiff testified he would have traveled had he received the message, would have arrived in time for him to attend the funeral.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

2. TELEGRAPHS AND TELEPHONES (§ 68*) — FAILURE TO TRANSMIT—MENTAL SUFFERING —HALF SISTERS AND BROTHERS.

The relationship of half-brother and half-sister between plaintiff and one whose expected death was attempted to be communicated to him by telephone is sufficiently close to authorize recovery for mental suffering, from being

prevented from attending her funeral, by reason of the telephone company's negligent failure to transmit the call.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

3. TELEGRAPHS AND TELEPHONES (§ 68*) — FAILURE TO TRANSMIT—MENTAL SUFFERING —NOTICE.

The notice to a telephone company being that it was desired to transmit to plaintiff a message that his "sister" was expected to die, though she was only his half-sister, yet his mental suffering from being prevented, by the company's negligent failure to transmit the call, from attending the funeral, being as great as if she had been his sister, damages to that extent are recoverable.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

4. TRIAL (§ 232*) — SUBMISSION OF SPECIAL ISSUES—INSTRUCTIONS.

The giving, preliminary to the statement of the special issues, on which a trial is had, of instructions in the nature of a general charge on the material issues in the case, should be avoided, as tending to confuse and mislead the jury; but this does not apply to the giving of definitions entirely proper in connection with the special issues submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 524, 525; Dec. Dig. § 232.*]

5. TRIAL (§ 352*)—SPECIAL ISSUES—GENERALITY.

A requested special issue, calling for all the information given to the agent of defendant telephone company when W. attempted to get in communication with plaintiff, is too general, and perhaps misleading to the jury, the only material fact sought being whether the agent was notified that W. expected to tell plaintiff that his sister was at the point of death.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. § 352.*]

6. PLEADING (§ 412*) — DENIAL OF SPECIAL PLEAS—WAIVER OF FAILURE.

Plaintiff's failure to deny special pleas of contributory negligence, as required by Rev. St. 1911, art. 1829, as amended by Acts 33d Leg. c. 127, providing that specially pleaded matters of defense not denied by plaintiff shall be taken as confessed, is waived, defendant not calling attention thereto, at the trial, by request that such pleas be taken as confessed, or otherwise, but only requesting an instruction for a verdict, without embodying such contention therein or in the objection to the refusal thereof.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1387–1394; Dec. Dig. § 412.*]

7. APPEAL AND ERROR (§ 1040*) — HARMLESS ERROR—FAILURE TO PARAGRAPH PETITION.

The facts alleged in the petition being specifically and specially answered by defendant, any error in overruling an exception to the petition as not complying with Rev. St. 1911, art. 1827, as amended by Acts 33d Leg. c. 127, requiring a petition to plead by separate paragraphs, consecutively numbered, each fact going to make up the cause of action and other allegations, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

8. TELEGRAPHS AND TELEPHONES (§ 66*) — FAILURE TO TRANSMIT—MENTAL SUFFERING —NOTICE TO COMPANY.

Evidence, in an action for failure of a telephone company to transmit a call, whereby attempt was made to notify plaintiff of the impending death of his half-sister, that she was dearer to plaintiff than his full sisters, is improper; defendant having been given no notice of such special affection.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

9. TELEGRAPHS AND TELEPHONES (§ 65*) — FAILURE TO TRANSMIT—ACTION—VARIANCE.

Variance between the allegation of the petition in an action for failure to transmit a telephone call, whereby attempt was made to notify plaintiff of the impending death of S., that S. was plaintiff's sister, and proof that she was his half-sister, is not material, defendant having been told when the call was put in that S. was plaintiff's sister.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 54–60; Dec. Dig. § 65.*]

10. TELEGRAPHS AND TELEPHONES (§ 65*) — FAILURE TO TRANSMIT—ACTION—VARIANCE.

Variance between the allegation of the petition and the proof as to the place of death and burial of S. is not material, in an action for failure to transmit a telephone call, in an attempt to notify plaintiff of the impending death of S., whereby plaintiff was prevented from attending her funeral.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 54–60; Dec. Dig. § 65.*]

11. TRIAL (§ 125*)—ARGUMENT OF COUNSEL— DAMAGES FROM MENTAL SUFFERING.

The remark of plaintiff's counsel, in argument to the jury, in an action for failure to transmit a telephone call, whereby plaintiff was prevented from attending the funeral of his half-sister, that the jury should allow such damages as should compensate them for the grief that they would have suffered under the same circumstances, is improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 303–307; Dec. Dig. § 125.*]

12. TELEGRAPHS AND TELEPHONES (§ 66*) — FAILURE TO TRANSMIT—ACTION—EVIDENCE.

Testimony of plaintiff, in an action for failure to transmit a telephone call, put in at 8:30 p. m., by W. at P., for plaintiff at his home at H., that at 9:30 that evening he, over his residence telephone, called up defendant's operator, at H., and asked whether she had received a call from him, saying he had been absent from home a short while, and that his sister was sick, and he was expecting a call, is admissible, over the objection of incompetency, irrelevancy, and immateriality; W. having testified that the operator at P. had stated to him that she was informed over the long-distance telephone that plaintiff was absent from home and so could not be reached, and that later in the evening, at 11 o'clock, she told him she had received a report from the operator at H. that plaintiff had no telephone in his house.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

13. TRIAL (§ 352*)—SPECIAL ISSUES—DOUBLE QUESTION.

The special issue, submitted to the jury, "If J., had gotten in telephone connection with * * * W., * * * could he and would he have attended the funeral?" embodies two questions, which should be submitted separately, as the same answer might not be given to both.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. § 352.*]

Appeal from District Court, Clay County; P. A. Martin, Judge.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Action by John V. Andrews against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

S. P. English and A. P. Wozencraft, both of Dallas, and J. C. Chesnutt, of Henrietta, for appellant. Taylor & Humphrey, of Henrietta, for appellee.

DUNKLIN, J. John V. Andrews recovered a judgment against the Southwestern Telegraph & Telephone Company for $750 as damages for mental anguish alleged to have been sustained by him as the proximate result of the negligence of the defendant company in failing to transmit a telephone call which plaintiff's brother, Will Andrews, attempted to send from Wills Point to Henrietta, plaintiff's home. From that judgment the defendant company has appealed.

The call was put in by Will Andrews at Wills Point on September 16, 1913, and his purpose was to inform plaintiff, then residing at Henrietta, that his half-sister, Mrs. Almedia Stone, was very ill and not expected to live. Mrs. Stone, who was then at Martin's Mill, about 23 miles from Wills Point, died very early on the morning of September 17th, and was buried on the afternoon of that day.

[1] According to evidence introduced by plaintiff the call was placed with defendant's agent at Wills Point about 8:30 o'clock on the evening of the 16th, and if it had been promptly communicated to plaintiff, he would have taken the early morning train of September 17th on the Ft. Worth & Denver City Railway to go to the bedside of his half-sister. He alleged in his pleadings that by taking that train he would have reached Martin's Mill in time to have attended the burial of Mrs. Stone. In order to make that trip, it would have been necessary for him to travel to Ft. Worth on the Ft. Worth & Denver City Railway, from Ft. Worth to Wills Point over the Texas & Pacific Railway, and from Wills Point to Martin's Mill by private conveyance. His brother met a Texas & Pacific Railway passenger train coming from the direction of Ft. Worth to Wills Point, due to reach Wills Point at 10:06 a. m. of September 17th, but it was an hour late, and did not arrive until 11 o'clock. He waited for this train to meet plaintiff and take him out to Martin's Mill. After the arrival of the train he proceeded to Martin's Mill, and arrived there just as the casket was being loaded into the hearse for the trip to the cemetery, and attended the burial of Mrs. Stone. If plaintiff had been upon that train he would have gone with his brother upon the trip so made. The wife of Will Andrews had notified plaintiff over defendant's telephone line about 6 o'clock on the morning of the 17th of the death of his sister, Mrs. Stone. The morning train of the Ft. Worth & Denver City Railway was scheduled to leave Henrietta for Ft. Worth at 3:40 o'clock, but on that date it was late and did not leave until 4:47. No proof was made when that train arrived at Ft. Worth, nor when it was scheduled to arrive at that station, and none was offered to show when the train which was met by Will Andrews at Wills Point was scheduled to leave Ft. Worth, nor when it actually did leave. For lack of such testimony the judgment of the trial court must be reversed. Plaintiff testified that on December 25, 1912, he left Henrietta on the early morning train of the Ft. Worth & Denver City Railway, and from Ft. Worth traveled on the Texas & Pacific Railway, passing through Wills Point, and arrived at Grand Saline, about 30 miles east of Wills Point, at 11 o'clock on the same morning. He testified that he did not recollect the exact hour he left Henrietta on that trip, nor the exact time he reached Ft. Worth, but gave it as his best recollection that he left Henrietta about 4 o'clock and arrived at Ft. Worth near 7 or 8 o'clock. This was the only testimony introduced by the plaintiff to show that he could have reached Martin's Mill in time to attend the burial of Mrs. Stone, if he had promptly received the telephone message which his brother attempted to send on the evening of September 16th. In the case of W. U. Tel. Co. v. McDavid, 103 Tex. 601, 132 S. W. 115, it was held that proof of schedules of two connecting railroads according to which a trip could have been made from Abilene to Newark in time for plaintiff's wife to have attended the burial of her father, was sufficient to support a finding that she could have attended such burial if the telegram announcing the death had been promptly delivered at Abilene. But plaintiff's testimony in this case, as shown above, was not sufficient to show even the schedules of the two trains upon which he said he would have traveled if the message had been promptly transmitted, to say nothing of the fact that the train upon which he would have started was more than one hour late reaching Henrietta, and the absence of any testimony to show whether the train which reached Wills Point about one hour late left Ft. Worth on schedule time, whatever such schedule may have been.

[2, 3] Appellant insists that the relationship of half-brother and half-sister was not sufficiently close to sustain any recovery by the plaintiff. It seems to be well settled in this state and other states that, in the absence of personal injury, damages are recoverable for mental anguish resulting from a failure to properly deliver a telegram announcing the sickness or death of parent or child, husband or wife, sister or brother, grandparent or grandchild. In W. U. Tel. Co. v. Ayers, 131 Ala. 391, 31 South. 78, 90 Am. St. Rep. 92, the Supreme Court of Alabama announced that the rule would not be extended so as to include relationships any more remote than those named, and of like effect is the decision of the Supreme Court

of Kentucky in Lee v. W. U. Tel. Co., reported in 130 Ky. 202, 113 S. W. 55. Recoveries were denied in the following cases by our courts: W. U. Tel. Co. v. Wilson, 97 Tex. 22, 75 S. W. 482, in which the relationship was that of uncle and niece; W. U. Tel. Co. v. Coffin, 88 Tex. 94, 30 S. W. 896, in which the relationship was that of brothers-in-law; W. U. Tel. Co. v. Gibson (Civ. App.) 39 S. W. 198, where the relationship was that of mother-in-law and son-in-law; Rich v. W. U. Tel. Co. (Civ. App.) 110 S. W. 93, where the relationship was that of son-in-law and father-in-law; W. U. Tel. Co. v. Kanause (Civ. App.) 143 S. W. 189, where the relationship was that of stepfather and stepson. In each and all of those cases no notice was given to the telegraph company at the time the messages were sent of any special affection existing between the plaintiff and the person whose sickness or death was announced in the telegram; the only recovery sought being for such grief as could reasonably have been anticipated from the relationship shown. In the case of the W. U. Tel. Co. v. Coffin, supra, which was a suit for damages for a negligent failure to deliver a telegram announcing the death of plaintiff's brother-in-law, our Supreme Court used the following language:

"The former decisions of this court have settled the following propositions of law applicable to the case:

"1. That the person for whose benefit a telegraphic message is sent, and who is named in the message, or of whose interest therein notice is given to the company at the time, may sue upon it in case of injury from the negligence of the telegraph company.

"2. That the telegraph company is charged with notice of the relationship which actually exists between the parties named, whether disclosed by the terms of the message or not.

"3. That the company receiving the message must take notice of the purposes for which the message was sent as disclosed by the language of the message, and in case of messages relating to serious sickness or death, it must be held to know that the person for whose benefit it is sent has a serious interest in the prompt delivery of it.

"4. From the fact of blood relationship, if it exists, a jury may, without other proof, infer that mental anguish was occasioned by the failure to be present at the bedside of the sick or at the funeral of the deceased relative.

"5. The mental anguish, whether accompanied by injury to the person or not, is a proper element of actual damages, and when caused by the negligence of the telegraph company in failing to deliver a message, compensation therefor may be recovered by the injured party. * * *

"That husband and wife, parent and child, and brothers and sisters, may recover under the principles before announced is settled by the decisions of this and other courts which have agreed with the decisions made in this state on that subject. To what degree of remote relationship the inference of injury may be extended is not necessary for us to determine at this time, but it is evident that there may be blood relations so far removed that no such presumption could be indulged by the jury.

"The right to recover, however, for such injuries cannot, upon principle, be placed upon kinship which affects only the questions of notice and proof of injury. The right of the plaintiff to recover, and the liability of the telegraph company to respond in damages in such cases, depends upon the general rules of law applicable to all classes of breach of contract. * * *

"In the case under consideration, the tender relations alleged to have existed on the part of the plaintiff towards deceased was a special condition of things not known to be usual between brothers-in-law; and in order to make the defendant liable for the injury arising out of these special circumstances, notice must have been given to it when the telegram was delivered for transmission. * * *

"There being neither proof of notice to the telegraph company of the special circumstances nor of the actual suffering by plaintiff, the judgment was unauthorized by the proof, and the Court of Civil Appeals erred in not reversing it."

The decision last noted was cited with approval in W. U. Tel. Co. v. Wilson, supra.

According to the foregoing decision, plaintiff's right to recover for the breach of the defendant's undertaking to place Will Andrews in communication with the plaintiff depends upon the general rules of law applicable to all classes of breach of contract, and does not depend upon the mere question of kinship which affects only the issue of the mental suffering sustained by him and that of notice of the probability of such suffering at the time defendant's agent at Wills Point was requested to put in a call for the plaintiff at Henrietta. According to that rule, if the defendant was negligent, plaintiff was entitled to recover damages for such mental suffering as was reasonably within the contemplation of the defendant as a result of the breach of its contract at the time its agent undertook the service requested by Will Andrews. Will Andrews testified that he told defendant's agent at Wills Point, at the time he tried to get in communication with plaintiff, that he "wanted to put in a call for John V. Andrews at Henrietta that his sister was dangerously sick, lying at the point of death." There was no evidence of any further notice of probable mental suffering on the part of plaintiff in the event of a failure to receive the information.

Independent of the reasoning last advanced, the relationship of half-brother and half-sister is as close as that of grandparent and grandchild, and if the latter relationship is a sufficient predicate to establish the presumption of mental suffering in case of a failure to deliver a message of this character, no reason is perceived why the same should not be said of the other relation. Notice to the defendant company that Mrs. Stone was a sister of the plaintiff was sufficient to apprise the defendant of probable mental suffering by plaintiff even greater than that which would ordinarily result from the failure of a brother to attend the burial of his half-sister. If, as testified to by plaintiff, his mental suffering resulting from a failure to attend the burial of Mrs. Stone was as great as if she had been his full sister, then the notice which Will Andrews testi-

fied he gave to the defendant would be sufficient to embrace the same, and no reason is perceived why, under the decision in the case of W. U. Tel. Co. v. Coffin, supra, damages even to that extent should not be recoverable. For the reasons stated there was no error in the court's refusal to give the requested peremptory instruction for a verdict in favor of the defendant.

[4] The trial was upon special issues. Preliminary to the statement of the special issues the court gave instructions in the nature of a general charge upon the material issues in the case and one assignment of error is predicated upon that action of the court. This criticism should be avoided upon another trial, as that method of instruction has a tendency to confuse and mislead the jury. Of course such suggestion has no reference to the definitions of ordinary care and negligence, as those definitions were entirely proper in connection with the special issues submitted. Whether or not Will Andrews notified defendant's agent at Wills Point of the purpose of his call for the plaintiff at Henrietta was not submitted by any special issues as should have been done.

[5] Two special issues were requested by the defendant which, in general terms, called for all information given to the defendant's agent by Will Andrews at the time he attempted to get in communication with the plaintiff. Of course the only material fact sought was whether or not the defendant's agent was notified of the fact that Will Andrews expected to tell the plaintiff that his sister was lying at the point of death and not expected to live, but the proposed issues called for all the information given, and were therefore too general, and perhaps would have been misleading to the jury.

[6] In addition to a general denial the defendant pleaded in general terms that the plaintiff's failure to receive the call in question was due to the contributory negligence of himself and his agents, and also that plaintiff and his agent or agents were each guilty of contributory negligence in failing to prevent or minimize his damages. Plaintiff filed no pleading in reply to these special pleas by the defendant. Appellant now insists that, by reason of the failure of plaintiff to file a reply to those special defenses in accordance with the act of the Thirty-Third Legislature, amending article 1829 of the Revised Civil Statutes (see Acts 1913, p. 256) the court erred in refusing to peremptorily instruct the jury to return a verdict in favor of the defendant. It does not appear from the record that the defendant called attention to this point upon the trial by requesting that its special pleas mentioned should be taken as confessed, as we think should have been done, if defendant sought to invoke the provisions of the statute mentioned. Besides, it does not appear that this contention was presented to the trial court by way

of an objection to the refusal of the requested instruction. In other words, the record entirely fails to show that appellant called attention of the trial judge, or of opposing counsel, to this contention at any time; and, under the circumstances, we think that the plaintiff's failure to deny the special pleas in accordance with the statute was waived by the defendant. Of course if the requested instruction had embodied the failure of plaintiff to deny the special pleas as a reason why the same should be given, possibly it might have been sufficient to raise the question, but it was in general terms and read as follows: "You are instructed to bring in a verdict for the defendant in this cause." See T. & P. Ry. Co. v. Tomlinson et al., 169 S. W. 217 (No. 7985, by this court, and not yet officially published).

[7] By the Acts of the Legislature of 1913, page 256, article 1827 of the Revised Statutes has been amended so as to require a petition filed in a suit to state "each fact going to make up such cause of action and other allegations shall be pleaded by separate paragraph and each paragraph numbered consecutively." Complaint is made of the court's action in overruling a special exception, addressed to plaintiff's petition, that divers and sundry facts constituting a part of plaintiff's cause of action were alleged in the same paragraph of the plaintiff's petition contrary to this statute. Evidently this statute was passed for the convenience of the defendant in preparing an answer to the petition to the end that the different facts may be admitted or denied without the necessity of repeating them. It seems, however, that in the present suit the facts so alleged were specifically and specially answered in the defendant's answer, and hence, if error was committed in the ruling complained of, the same will work no harm or inconvenience to the defendant upon another trial.

[8-10] The testimony of plaintiff that Mrs. Stone was dearer to him than his full sisters we think was improperly admitted, since no notice of such special affection was given to the defendant. The further objection that the proof was at variance with the allegations in the plaintiff's petition, such allegations being that Mrs. Stone was plaintiff's sister, we think is untenable for the reasons already noted. We are of the opinion, further, that there was no merit in defendant's objection to proof of Mrs. Stone's death and burial at Martin's Mill rather than at Wills Point, as alleged in plaintiff's petition; the objection being that the same constituted a material variance.

[11] We are of the opinion that the remarks made by counsel for the plaintiff in his closing argument to the jury, upon which the eleventh assignment of error is predicated, to the effect that the jury should allow such damages as would compensate them for the grief that they would have suffered under the same circumstances, were improper,

and should have been excluded upon the defendant's request.

[12] Plaintiff testified that on the night of Septemebr 16th he called up defendant's operator at Henrietta over his residence phone, and asked whether or not she had received a long-distance call for him, saying that he had been absent from home for a short time; that his sister was sick, and he was expecting a call. He further testified that this conversation occurred about 9 or 9:30 o'clock in the evening. We think this testimony was admissible, over the objection urged thereto, that the same was incompetent, irrelevant, and immaterial to any issue presented by plaintiff's pleadings. According to testimony of Will Andrews the operator at Wills Point had stated to him that she was informed over the long-distance telephone that plaintiff was absent from home and could not be reached on that account, and that later, about 11 o'clock p. m., the operator told him that she had received a report from the operator at Henrietta, to the effect that plaintiff had no telephone at his residence.

[13] One of the special issues submitted to the jury read:

"If John Andrews, plaintiff, had gotten in telephone connection with his brother, Will Andrews, on the night of the 16th of September, could he and would he have attended the funeral of Mrs. Almedia Stone? Answer Yes or No."

Upon another trial if special issues are submitted, we think the two questions embodied in this issue should be submitted separately, as the same answer might not be given to both questions.

For the reasons indicated the judgment is reversed, and the cause remanded.

SPEER, J., not sitting.