SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. ANDREWS. (No. 8223.)†

(Court of Civil Appeals of Texas. Ft. Worth. June 12, 1915. Rehearing Denied July 3, 1915.)

1. TELEGRAPHS AND TELEPHONES ⚖=68—ACTION FOR DAMAGES — MENTAL SUFFERING — RELATIONSHIP.

The relationship of half-brother and half-sister, between one of whose expected death an attempt was made to notify plaintiff by telephone, was sufficiently close to authorize recovery for mental suffering from being prevented from attending her funeral, by reason of the telephone company's negligent failure to transmit the call.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. ⚖=68.]

2. TRIAL ⚖=203—INSTRUCTIONS—DEFENSES.

It is the duty of the court, when requested, to give an affirmative charge on any defense as applied to the particular facts in the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 477–479; Dec. Dig. ⚖=203.]

3. TRIAL ⚖=260 — INSTRUCTIONS — CONVERSE OF ABSTRACT INSTRUCTION.

In an action for failure to transmit a telephone call attempting to notify plaintiff of the expected death of his half-sister, who died and was buried the next day, wherein the court had given an approved definition of the term "negligence," and had instructed as to defendant's duty to use reasonable diligence to place the plaintiff's brother in communication with plaintiff, and that its failure to use such diligence would be negligence, and that the plaintiff had the burden of establishing his cause of action by a preponderance of the evidence, defendant's requested instruction stating the converse of the abstract instructions given was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ⚖=260.]

4. CORPORATIONS ⚖=423 — LIABILITY FOR TORTS.

A corporation is liable for the torts of its servants or agents, precisely as a natural person.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695; Dec. Dig. ⚖=423.]

5. APPEAL AND ERROR ⚖=1060 — HARMLESS ERROR — MISSTATEMENT OF LAW IN ARGUMENT.

In an action for failure to transmit a telephone call attempting to notify plaintiff of the expected death of his half-sister, the error of plaintiff's attorney in stating that a telephone company owed a great deal higher duty than an individual, in view of the facts supporting a recovery and the amount of the verdict, and rule 62a for Courts of Civil Appeals (149 S. W. x), declaring that no judgment shall be reversed for error, unless the appellate court believes that the error was such a denial of the appellant's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, did not require the reversal of a judgment for plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ⚖=1060.]

6. TELEGRAPHS AND TELEPHONES ⚖=68—ACTION FOR DAMAGES — MENTAL SUFFERING — NOTICE.

In action for failure of a telephone company to transmit a call attempting to notify plaintiff of the expected death of his half-sister, the fact that the sender told the operator that plaintiff's half-sister was dangerously sick and expected to die, and that it was a "rush call," was sufficient to notify defendant of probable mental suffering from the failure to transmit it; and even if he only stated that it was a "sick message" it was notice of such probable mental suffering.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. ⚖=68.]

7. TRIAL ⚖=260—INSTRUCTIONS—REQUESTED INSTRUCTIONS.

In an action for failure to transmit a telephone call attempting to notify plaintiff of the expected death of his half-sister, who died and was buried the next day, wherein the court charged that the jury might award such a sum as they might believe to be a reasonable compensation for the mental anguish suffered by plaintiff, and there was nothing to show that the jury considered any other measure of damages, defendant's requested charge that the jury should not consider the plaintiff's mental anguish from the fact of his half-sister's death was properly refused, as covered by the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ⚖=260.]

8. APPEAL AND ERROR ⚖=1039 — HARMLESS ERROR—PLEADING.

In an action for failure to transmit a telephone call attempting to notify plaintiff of the expected death of his half-sister, who died and was buried the next day, any defect in the petition, in that it did not allege how plaintiff could have gone to the burial, in view of the fact of a former trial in which the facts were fully developed, and where there was no complaint of surprise at plaintiff's evidence, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. ⚖= 1039.]

9. TELEGRAPHS AND TELEPHONES ⚖=70—MENTAL SUFFERING — ACTION FOR DAMAGES — SET-OFF.

In such action the defendant had no right to set off against any sum that the jury might find plaintiff entitled to as compensation for his

---

mental suffering the expenses that plaintiff would have reasonably incurred if he had attended the funeral.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 72, 73 ; Dec. Dig. ☜70.]

Appeal from District Court, Clay County; Edgar Scurry, Judge.

Action by John V. Andrews against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff, and defendant appeals. Affirmed.

A. P. Wozencraft, S. P. English, F. W. Wozencraft, and J. D. Frank, all of Dallas, and J. C. Chesnutt, of Henrietta, for appellant. Arnold & Arnold, of Graham, and Leslie Humphrey, of Henrietta, for appellee.

BUCK, J.    This suit was instituted by John V. Andrews against the Southwestern Telegraph & Telephone Company for recovery of damages for mental suffering. This is the second time this case has been before us, the opinion on the first appeal being found in 169 S. W. 218. As a recitation of the pleadings and short statement of the facts are given in that opinion, it will be unnecessary to repeat here so much as therein given, but we will set out such pleadings and evidence in the course of this opinion as may be deemed necessary for a clear understanding of the issues involved and the questions discussed.

[1] In its first assignment, appellant complains of the failure of the court to give a requested peremptory instruction, on the ground that, the deceased being only a half-sister to plaintiff, such relationship is too remote to constitute a basis of recovery. Having passed upon this issue adversely to appellant in the former appeal, and having no reason to alter the conclusion therein reached, this assignment is overruled.

[2, 3] The second assignment complains of the refusal of the court to give special charge No. 2, requested by defendant, which, stripped of its formal parts, reads as follows:

"You are instructed that the defendant, the Southwestern Telegraph & Telephone Company, or its employés would not be guilty of negligence in handling the telephone call for John Andrews complained of if said company and its employés used such care in handling same as an ordinarily prudent person would have used under the same or similar circumstances, and unless you believe from the evidence that the defendant or its employés, in handling such call, did not use such care as an ordinarily prudent person would have used under the same or similar circumstances, you must answer 'No,' to the special issue No. 1, submitted to you in the court's main charge."

While it is the duty of the court to give, when requested, an affirmative charge on any defense as applied to the particular facts in the case, it is not incumbent upon the court to give in special charge the converse of every abstract proposition of law submitted in the main charge. The court, in the main charge, had given an approved definition of the term "negligence," and had instructed the jury as to defendant's duty to use reasonable diligence to place the plaintiff's brother, Will Andrews, at Wills Point in telephone connection with the plaintiff at Henrietta on September 16, 1913, and that the failure to use such diligence would be negligence under the law. And the court had further instructed the jury that the burden of proof was upon the plaintiff to establish his cause of action by a preponderance of the testimony, and that if he had failed to do so the jury would answer issues 1, 2, and 3 in the negative. We think the court's charge was sufficient, and the second assignment is overruled.

[4, 5] The third assignment is directed to alleged improper remarks by one of the attorneys for plaintiff in his closing argument, shown by bill of exception as follows:

" 'Will you run over the court's charge with me a few minutes? He tells you that negligence is a failure to do that which an ordinarily prudent person would do under the same or similar circumstances. A telephone or railroad company owes a good deal higher duty than an individual.' Whereupon counsel for defendant objected, for the reason that plaintiff's counsel had no right to make such statement to the jury, because it is not the law that a railroad company and a telephone company owe a higher duty than an individual does. Whereupon counsel for plaintiff continued: 'Gentlemen of the jury, if that isn't the law, then I don't know it.' Whereupon counsel for defendant, still addressing himself to the court, said: 'Will your honor please rule on our objection?' Whereupon the court said: 'Your objection is overruled.' "

This bill of exception was approved, with the following expression by the trial judge:

"The argument complained of was made in reply to an argument made by one of the attorneys for the defendant, in which he said: 'Gentlemen, you would not think of holding an individual liable for the kind of negligence shown in this case, and you should not hold this defendant.' "

Appellant urges that it is the law that a corporation is liable for the torts committed by its servants or agents precisely as natural persons are, and we recognize that this contention is supported by the authorities of this state. As to what will constitute any given degree of care under any given set of circumstances will depend upon the circumstances shown. And we do not think that a telephone company owned by a corporation would be charged with any higher duty to its patrons than one owned by an individual. But, while admitting the inaccuracy of the statement of the law contained in appellee's counsel's argument, yet we do not feel justified in concluding that any probable injury resulted to the defendant company because thereof. We think the facts support a recovery, and that the amount of the judgment is not excessive under the evidence shown, and, under rule 62a (149 S. W. x), the assignment is overruled.

What we have said in reference to the third assignment will suffice as to the fourth,

which complains of the verdict being excessive under the facts of this case.

[6] The fifth assignment complains of the failure of the court to give the following requested special issue:

"In connection with the call for John Andrews complained of, did Will Andrews tell the operator at Wills Point who was sick?"

While Will Andrews testified that, when he put in the call at the defendant company's office at Wills Point for his brother, John Andrews, at Henrietta, he told the operator that John Andrews' sister was dangerously sick and expected to die, and told her that it was a "rush call," the operator, Miss Grace Norwood, denied that Will Andrews gave her such information, but stated that he told her that it was a "sick message," but that he did not tell her who was sick. In the case of Western Union Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920, our Supreme Court said:

"It is well known to the public, and cannot be unknown to telegraph companies, that the utmost brevity of expression is cultivated in correspondence by telegraph. It is well known that that mode of communication is chiefly resorted to in matters of importance, financially and socially, requiring great dispatch. When such communications relate to sickness and death there accompanies them a common-sense suggestion that they are of importance, and that the persons addressed have in them a serious interest. It would be an unreasonable rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed. When the general nature of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be, when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so to charge his principal with the information that inquiries would have developed."

In W. U. Tel. Co. v. Riviere, 174 S. W. 650, where a telegraph message was sent reading, "Come on first train. May pass away at any moment," and signed "Mrs. R. C. Wallis," it was held by the Court of Appeals for the Third District that the message disclosed on its face enough to put the telegraph company on notice that some person was ill, and that, although the message did not mention the name of the person who was ill, yet the company was not thereby relieved of liability for delay. The opinion, after citing the Adams Case, supra, and Tel. Co. v. Kirkpatrick, 76 Tex. 217, 13 S. W. 70, 18 Am. St. Rep. 37, and Tel. Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826, says:

"The fundamental doctrine and underlying principle upon which the Adams Case rests is the doctrine of notice resulting from knowledge of facts sufficient to put a prudent person upon inquiry; and therefore, when a message indicates upon its face that it relates to serious illness and probable death, it would seem, upon principle, to be sufficient to indicate to the telegraph company that the message was sent in order to give some person an opportunity to come to the bedside of the person who was ill. Who that person might be would, in the nature of things, be immaterial to the telegraph company; but if it desired to know it could as readily ascertain that fact as it could the relationship between the addressee named in the message and the person referred to as being ill."

Appellant, in attempting to distinguish between the facts disclosed and the plaintiff's pleadings in the instant case and those in the Riviere Case, urges that in this case the plaintiff did not plead that such facts were shown as would have put the company upon inquiry, by means of which it would have learned the other facts, and that the evidence fails to show that if inquiry had been made by the operator of the telegraph company that Will Andrews would have been willing to disclose the necessary facts. It is sufficient answer to this argument to say, that in the instant case plaintiff did plead that his brother, Will Andrews, informed the agent of the relationship of brother and sister existing between plaintiff and the sick person, and that the latter was dangerously sick, in fact in a dying condition, and that these allegations in the petition are amply supported by the testimony of Will Andrews. The fifth assignment is overruled, and also the sixth, which involves practically the same question.

The seventh assignment, directed to the failure of the court to submit special issue No. 6, which reads as follows:

"What information, if any, with respect to the nature and purpose of the call for John Andrews did Will Andrews give the operator at Wills Point?"

—is overruled, because even the defendant's witness, Miss Norwood, testified that she was informed that it was "a sick message," and we hold that such information was sufficient to put the company upon notice of the further facts which would have been disclosed upon inquiry.

In the eighth assignment, complaint is made to the admission, over objection, of the testimony of plaintiff that on the night of September 16, 1913, he had two telephone conversations with the defendant's operator at Henrietta, one about 8:30 p. m. and the other after lodge, in which he informed the operator that he was expecting a long distance call from his sister, who was sick, and the operator both times told him there was no call for him. For the reasons given in our former opinion as to the admissibility of this testimony, this assignment is overruled.

[7] The ninth assignment urges error in the failure of the court to give the following requested charge:

"In connection with special issue No. 3 (four) of the court's main charge, you are instructed that you must not consider the grief or mental anguish, if any, which plaintiff suffered by reason of the fact of the death of Mrs. Stone."

While this special issue would have been properly submitted, yet there is nothing in the record to indicate that the jury, in determining the amount of damages assessed,

to wit, $500, considered any measure of damages other than that submitted by the court in said fourth special issue, to wit, "what sum you believe would be a reasonable compensation for the mental anguish, if any, suffered by plaintiff by reason of his not being able to attend the funeral of Mrs. Almeda Stone." We do not think there is presented reversible error in the failure to submit the requested special issue, nor of the failure to give the kindred one set out under the tenth assignment.

The special issue, "Has John Andrews suffered any mental anguish by reason of not being at the funeral of Mrs. Stone?" was tendered by defendant, and to the failure to give the same the eleventh assignment is directed. It will be noted that in submitting the measure of damages, special issue No. 4, the court fixed it at such sum as the jury might believe would be a reasonable compensation "for the mental anguish, if any, suffered by plaintiff," etc. As will be seen, the court did not assume that plaintiff did suffer mental anguish by reason of his failure to be present at his sister's funeral, but left to the jury the questions, (1) whether plaintiff suffered any mental anguish, and (2) if he did suffer mental anguish by reason of said failure, what sum would reasonably compensate him therefor. We believe the issue presented by the requested charge was covered in the court's main charge.

We do not think there is any merit in the complaint made in appellant's twelfth assignment, and it is overruled.

[8] The thirteenth assignment is directed to the action of the court in overruling defendant's special exception to paragraph 5 of plaintiff's original petition. It is specially urged that plaintiff's petition was defective, as it nowhere alleged how plaintiff could have gone to the place where his sister was to be buried, or on what railroad train or railway he would have left Henrietta, in what direction he would have gone, what connection, if any, he would have made to continue his journey to Wills Point, etc. In view of the fact that a former trial of this case had been had, in which the facts were rather fully developed, and that, therefore, the defendant was informed as to what would be the contention and evidence of the plaintiff upon these points, to the failure to set out which the special exception is leveled, we do not believe that appellant has been denied any substantial right, or suffered any material injury. Certainly, none is alleged. The rule requiring fullness and particularity of pleading is founded upon the right in the adverse party to be advised of evidence likely to be introduced under such pleadings, so that he may be prepared to meet it. Even in its amended motion for new trial, defendant makes no complaint that it was surprised by plaintiff's evidence as to these matters, or was not prepared to meet it. No specific injury being alleged or shown we are justified in assuming that none was suffered. The assignment is overruled.

[9] In its fourteenth assignment, appellant presents a novel proposition, i. e., the right by the telephone company of a set-off, or a reduction, against any sum that the jury might find the plaintiff entitled to as compensation for his mental suffering, of the amount of expense that the plaintiff would have reasonably incurred if he had attended his sister's funeral. To the failure of the court to submit the issue as to what such expense would have been, the assignment is directed. The authorities cited in support of this proposition, to wit, that where merchandise, goods, or live stock, are lost in transit, and the freight or other transportation charges have not been paid, the plaintiff could only recover the reasonable value of the goods or live stock lost less the amount of freight or other charges, which, because of the loss of the shipment, he did not pay we do not believe to be in point, or that the two propositions are analogous. Moreover, the evidence as to what this expense would have been is uncontroverted, to wit, $12 to $15.

We do not think that the questions asked of plaintiff and of Will Andrews, as presented in the fifteenth and sixteenth assignments, are subject to the objections made that they were leading and suggestive, nor do we find any reversible error shown in the seventeenth and last assignment.

Judgment affirmed.