PRODUCERS' OIL CO. et al. v. STATE et
al.  (No. 6206.)

(Court of Civil Appeals of Texas.   San An-
tonio.   May 22, 1919.   Rehearing Denied
June 14, 1919.)

1. APPEAL AND ERROR ☞1001(1)—REVIEW—
QUESTIONS OF FACT.

If the evidence is sufficient, and there are
no errors of law, the judgment of the trial court
upon the findings of the jury must be sustained.

2. BOUNDARIES ☞33—LOCATION OF CORNERS
—BURDEN OF PROOF.

In a boundary suit by the state, where the
determining question was as to whether a cor-
ner was located by the surveyor on the bank
of a river as it existed at the time of the suit
or on the bank of a channel through which the
river previously flowed, it was error to re-
fuse to instruct that the burden was on plain-
tiff to establish the location of the corner on
what it claimed was the abandoned portion of
the river.

3. PUBLIC LANDS ☞172(½) — TITLE — BUR-
DEN OF PROOF.

The source of all title coming from the sov-
ereign power, any one claiming title to lands
in the state must show that a portion of the
public domain has been segregated by some
grant or purchase and no longer forms a part
of the public lands.

4. STATES ☞209 — SUITS BY STATE — EVI-
DENCE.

The state, in its litigation with its citi-
zens, has no special immunities or privileges
as to rules of evidence and burden of proof.

5. EVIDENCE ☞94—SHIFTING OF BURDEN OF
PROOF.

In a suit by the state to recover land with-
in its borders, where it makes a prima facie
case, the burden rests upon defendants to show
a grant from the state, and that the land sued
for lies within the boundaries of the grant; but
the burden of proof on the whole case does not
shift, although the burden of introducing proof
shifts back and forth, according to affirmative
issues.

6. BOUNDARIES ☞13 — RIVERS — CALLS —
MISTAKE.

A call for a river may be ignored only when
it is shown to have been made by mistake.

7. TRIAL ☞25(4) — RIGHT TO OPEN AND
CLOSE ARGUMENT—STATUTES.

Rev. St. 1911, art. 1953, gives the right
to open and close the argument only to the par-
ty having, under the pleadings, the burden of
proof on the whole case.

Appeal from District Court, Travis Coun-
ty; Ireland Graves, Judge.

Suit by the State against the Producers'
Oil Company and others.   From the decree,
certain defendants appeal.   Reversed and re-
manded.

N. C. Abbott, A. R. & W. P. Hamblen, and
W. O. Crain, all of Houston, Victor Brooks,
of Austin, and Woods, King & John, of Hous-
ton, for appellants.

C. M. Cureton, W. P. Dumas, W. F.
Schenck, and G. B. Smedley, all of Austin, for
appellees.

COBBS, J.   The state of Texas brought
this suit to recover against the appellants
two tracts of land, which were designated as
islands in the West fork of the San Jacinto
river, in Harris county, Tex.   One, contain-
ing 18.8 acres, lies in the salient of the river,
and appellants contend lies in the Mary Ow-
ens and Elijah Votaw surveys; and the oth-
er, containing 20 acres, appellants contend
lies in the Elijah Votaw survey.   The field
notes of each are given.

The defendant H. C. House answers that
he is the owner of 1,135.3 acres off of the
south end of the Mary Owens league, adjoin-
ing the river, as the said league was surveyed
April 3, 1838, and patented October 10, 1845,
said survey and field notes describing the
land as extending to the east bank of the
West fork of the San Jacinto river.

The Foster Lumber Company answers that
it is the owner of the Elijah Votaw one-third
league of land, as the same was surveyed Oc-
tober 10, 1838, and patented October 10, 1845,
said survey and field notes describing the
land as extending to the West fork of the
San Jacinto river, and calling for and ad-
joining the Mary Owens on the east, and the
east line of the Mary Owens and the west
line of the Elijah Votaw is a common line,
and the southeast corner of the Mary Owens
being the southwest corner of the Elijah Vo-
taw; and it will be seen that the south com-
mon corner of the two surveys, as claimed by
defendants, is on the inner point of the sa-
lient made by a rather sharp curve in the riv-
er, the south common corner of said surveys,
as claimed by the state, being at a point 422
varas north from the present river, on what
the plaintiffs contend was the north bank of
the north or old channel of the river, and the
plaintiffs contending that at this point there
was, at the time of the location of both of
these surveys, two channels of the river and
that the land lying between such channels
was not included in the survey or patent to
either of these surveys.   The original surveys
described these lands as lying on the east side
of the river.   The general course of the river
runs to the southeast, but at the point of the
river under investigation its course was east,
thus making these lands lie on the north side
of this part of the river.   This will explain
some discrepancies in the directions men-
tioned in the record.

The defendants the Texas Company, suc-
cessor to Producers' Oil Company, and Mar-
gay Oil Company, are claiming by mineral

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

leases under the said H. C. House and Foster Lumber Company. All claims for oil taken out and for damages were abandoned, leaving the title to the land alone for consideration.

This case was tried before a jury upon special issues, submitted by the court, and upon their verdict, or answers returned, a judgment was entered against all the defendants for the title and possession of the land sued for, but no judgment for value of petroleum oil taken from the lands. The court further made permanent the injunction issued against the defendants on December 4, 1916, in so far as it relates to the two tracts sued for.

While this suit describes specific parcels of land sought to be recovered by field notes made thereto, it is but a boundary suit, after all, to definitely locate lines of surveys bounding same. This suit is not specially complicated any more than any other ordinary boundary case, but the record is quite voluminous.

[1] It is our duty to sustain the judgment of the court upon the findings of the jury, if the evidence is sufficient, and if there are no errors of law. The true question, then, is whether the evidence was sufficient to locate where the western line of the Votaw survey and the eastern line of the Mary Owens survey cornered that, being a common boundary line between them and a common corner, and where they cornered on the San Jacinto river as called for in the field notes of both, and whether in fact the call was for the main river or a prong of that river. Upon that depends the solution of the question, as to whether lands sued for are outside of the true boundary of the Owens and Votaw surveys.

The Mary Owens survey was made April 3, 1838. It began at a stake on the bank of the San Jacinto river, running thence down the river by its meanders 2,500 varas to a stake on the bank of the river, north 10,349.5 varas, thence west 2,500 varas, and thence south 9,406 varas to the place of beginning.

The Elijah Votaw survey was surveyed October 10, 1838. By its field notes it is described calling for a point on the San Jacinto river as beginning at the southeast corner of the Owens survey on the San Jacinto river and running thence north 5,850 varas, thence east 1,430, thence south 5,600 varas, to a stake on the bank of the river, and thence with the meanders of the river to place of beginning. The field notes of neither survey call to cross the river. They, according to the field notes, must stop when river is reached. The Votaw is made subsequent to Owens survey and calls to begin at the southeast corner thereof; the eastern boundary line of the Owens is the western boundary line of Votaw, they are contiguous surveys having this common boundary line, and when you locate the southeast corner of the Owens you have the common southwest beginning of the Votaw.

The contention of the state is there was at this common corner a branch or prong of the San Jacinto river that diverged from the main river, just north of its starting from the Mary Owens survey and turning back to the river to make two islands, partly in the Owens and ending in the Votaw survey, and the surveyor who made the survey in 1838 mistook the northern prong of the river in passing from its banks apparently flowing through the southern part of the Votaw survey making the islands, was in fact at that time the real and true river and there established the corner for the two surveys and marked it on the ground, and the main river was some 422 varas at that point further south, of which the surveyor had no knowledge and did not go there. The testimony is voluminous, the field notes of the surveys were before the jury, maps in use from the general land office from 1838 down to date of trial, showing what was the land office recognition at the various periods, and maps of Harris county, and the testimony of many surveyors, many of whom had at various times made surveys pro and con. Testimony was offered by both sides upon every phase of the case. The main question to determine was whether the call for the natural object, the San Jacinto river, meant that river at this trial, or as it was flowing as a river in 1838 in the main channel, it now having ceased to flow except in main channel and there are no islands entirely surrounded by water all the time. The Owens southeast called for a stake on the bank of the river from which a gum 4 inches in diameter marked "N" bears N. 55° W. distant 1.2 varas, and a birch 18 inches in diameter marked "O" bears N. 13° W. distant 5.2 varas.

The Votaw begins at the southeast corner of Owens survey on the west San Jacinto, a stake, from which sweet gum 3 inches in diameter bears north 3 varas distant and a birch 15 inches in diameter bears S., distant 5 varas, marked "O." It then runs north with the Owens eastern boundary line, having a common corner on that northern line, calling for a stake for corner from which a pine 10 inches in diameter bears S. 10° W. distant 5 varas, marked "H," a pine 12 inches in diameter bears N. 10° E. distant 5, marked "1."

There was much evidence pro and con going to show at one time there was a northern prong of the river, as claimed by the appellees. It was shown by the depression in the ground, the appearance of what once had been an old river bed partly filled by dirt and débris; that a storm in 1875 and other overflows had filled it in, and there was standing water in some portions of it. As this case will have to be retried, we refrain from further discussing the facts.

The river is represented on one of the

maps, which we roughly reproduce to show the two channels and the salient between, to give a better general idea of the alleged channel and the river and land sued for.

The appellants have grouped together 13 assignments of error, and under all of them submit the proposition that the evidence is insufficient to sustain the verdict and judgment; no evidence tending to show there were two channels in the San Jacinto river at that place when Mary Owens and Elijah Votaw surveys were located and surveyed in 1838, nor sufficient to show two channels at said point, nor either of said tracts were islands, or surrounded on all sides by the channel of the river, or the surveys cornered on bank of alleged slough or channel, other than on the river as now existing; should have instructed a verdict for defendants, should not have submitted the special issues to the jury as he did, and should have sustained defendants' objections to the submission of questions 1, 2, 3, and 4. We will discuss all assignments together raising same questions.

The issues submitted by the court were as follows:

"Question No. 1: At the time that the Mary Owens and the Elijah Votaw surveys were made in the year 1838, was there a channel of the San Jacinto river on the north side of the land described in plaintiff's petition as tract No. 1, through which, at that time, the river, or a branch of the river (if there was such a branch), flowed when the river was at ordinary stages?

"Question No. 2: At the time that the Mary Owens and the Elijah Votaw surveys were made in the year 1838, was there a channel of the San Jacinto river on the north side of the land described in plaintiff's petition as tract No. 2, through which, at that time, the river, or a branch of the river (if there was such a branch), flowed when the river was at ordinary stages?

"Question No. 3: At what point did the original surveyor actually fix the southeast corner of the Mary Owens survey? That is, did he place said corner on the north bank of the present San Jacinto river, or did he place it on the north bank of what the plaintiffs claim is the abandoned portion of the river?

"Question No. 4: At what point did the original surveyor actually fix the southwest corner of the Elijah Votaw survey? That is, did he place said corner on the north bank of the present San Jacinto river, or did he place it on the north bank of what the plaintiffs claim is the abandoned portion of the river?

"(5) To aid you in answering questions Nos. 3 and 4, you are instructed that, ordinarily, calls for natural objects, such as rivers, lakes, creeks, springs, etc., are controlling calls, Artificial objects, such as monuments, adjacent surveys, marked lines and courses, etc., are second in importance to the above.

"(6) Course is the third in importance, and distance the fourth. If, after considering these general rules, there is still uncertainty or confusion as to the true line, that rule should be adopted which is most consistent with the intention apparent upon the face of the grant, as ascertainable from all the surrounding circumstances.

"(6a) You are further instructed that the true location of any survey, or any line or corner thereof, is determined by where the surveyor actually placed it; and it is the duty of the jury to follow the footsteps of the surveyor and find the lines and corners which he actually made on the ground. This is the true criterion and the foregoing rules are merely to aid the jury in ascertaining where the surveyor actually went on the ground.

"(7) You are further instructed that, in the absence of evidence to the contrary, it is presumed that the surveyor, in making his surveys of the Mary Owens and the Votaw, actually surveyed on the ground all of the lines called for, and ran to all of the natural objects, artificial objects or lines called for by him in his field notes of said surveys.

"(8) And if you have found that the slough or channel north of the present river is not an abandoned portion of what was the main river in 1838, then you must find that the surveyor actually went to the north bank of the river as called for in his field notes, unless you believe that he went merely to the north bank of the channel or slough, thinking it was the river, and that he called it the river by mistake; and you are further instructed that the burden is upon the plaintiffs to prove such mistake, if any, by a preponderance of the evidence."

The court also gave special charge No. 5, asked by defendants, to wit:

"If you answer question No. 1 in the affirmative, and in answer to question No. 3 you find that the surveyor, in locating the southeast corner of the Mary Owens in 1838, stopped at the point claimed by the plaintiffs, then you will answer the following question:

"Is or is not the land lying between that point and the present San Jacinto river the result of gradual accumulations and accretion from a gradual change in the river?

"You will answer this question 'Yes' or 'No' as you may find the fact to be."

To all the questions the jury answered as follows:

"We, the jury, answer the questions submitted to us in this cause as follows:

"Answer to question No. 1: There was.

"Answer to question No. 2: There was.

"Answer to question No. 3: The abandoned bank.

"Answer to question No. 4: The abandoned bank.

"Answer to special instruction No. 5, requested by defendants: No."

[2] The twenty-first assignment complains of the refusal of the court to give their special charge No. 6, as follows:

"That the burden of proof is upon the plaintiffs to establish the affirmative of questions Nos. 1 and 2 by the preponderance of evidence, and you are further instructed that the burden of proof is upon the plaintiffs to establish the fact that the original surveyors, in fixing the southeast corner of the Mary Owens survey and the southwest corner of the Elijah Votaw survey, placed said corner on the N. bank of what plaintiffs claim is the abandoned portion of the river."

As will be seen from what we have to say, this charge should have been given.

[3, 4] The source of all title comes from the sovereign power, and any one claiming title to lands in this state must show that a portion of the public domain has been segregated by some grant or purchase and no longer forming a part of the public lands. Appellee cites State v. Jadwin, 85 S. W. 490 as one of the authorities to support its contention that the burden was not on the state, but at any rate was sufficiently charged. A careful examination of the case in no way supports the contention that the state, in its litigation with its citizens, is intrenched in a more advantageous position in regard to applying the general rule in respect to the burden of proof; by the same rules of evidence and rules of procedure the state is bound, just as any other citizen. It has no special immunities and privileges when litigating with the citizen.

But this has nothing to do with the title of the state to the unappropriated domain that remains in it until shown to be segregated by the claimant, in some lawful way. In Jadwin Case, supra, the court said:

"The state showed that the land sued for was within its borders. It then, of course, devolved upon defendants to show that it had in some way parted with its title."

This is laying down the rule broadly. That rule is true in all land suits. It meant nothing more nor less than that the state must recover upon the strength of its title. As the presumption is always present in every case that the state owns all the public domain, when it sues and exhibits title to lands in its borders, that presumption must be overcome by deraigning title out of the state. Whether the land has been appropriated or not when the state sues, that presumption continues until it is shown it has parted with title to the specific land.

The burden of proof immediately shifts to the state, as in any other case, when the defendant exhibits his location and appropriation, for no exception can be found that gives this advantage to the state over her citizens. The burden of proof at the beginning of every trial is on the same party throughout as to the existence of every fact essential to the case. This burden of evidence is continued until the party with the burden of proof establishes a prima facie case, for nothing less will shift the burden of evidence. It is also well settled that the court must give an affirmative charge on any defense as applied to any particular facts in the case. S. W. Tel. Co. v. Andrews, 178 S. W. 574. It is also held the court should charge the jury with reference to the rules of law applicable to such issues, including a charge on the burden of proof. Sanger v. First National Bank, 170 S. W. 1087.

It is also held that it is not error to refuse defendant's requested instruction presenting no affirmative defense, but merely an affirmative presentation of the negative side of plaintiff's case, where the court's charge has stated that the plaintiff has the burden of proving by the preponderance of the evidence the material allegations of his petition. Chicago, etc., Ry. Co. v. De Bord, 146 S. W. 667. Before the burden of proof shifts in any case, plaintiff must make a prima facie one. Sebastian v. Martin Brown Company, 75 Tex. 291, 12 S. W. 986. When plaintiff makes a prima facie case it devolves on defendant to rebut. Railway v. Johnson, 92 Tex. 591, 50 S. W. 563; St. Louis, etc., Ry. Co. v. Moss, 37 Tex. Civ. App. 461, 84 S. W. 281. But the burden of proof on the whole case does not shift. Clark v. Hills, 67 Tex. 141, 2 S. W. 356.

The court is not compelled to charge on the burden of proof. The propriety of doing so depends on the nature of the evidence, and even then it would be preferable. Chittim v. Martinez, 94 Tex. 141, 58 S. W. 948, affirmed in 60 S. W. 258. But the evidence in this case demands such a charge. While the rule is that the burden of proof is upon the party alleging the affirmative of any issue it is not always necessary or proper to give it in charge to the jury, as in many cases testimony bearing upon the issues comes from both parties, and in passing upon the entire testimony the jury should not have their attention directed to the party from whom the testimony may come; it being sufficient in such cases if the charge indicates the questions of fact to be found. Blum v. Strong, 71 Tex. 321, 6 S. W. 167. See, also, American Cotton Co. v. Collier, 30 Tex. Civ. App. 105, 69 S. W. 1021, affirmed in 97 Tex. 625, without opinion.

In American Cotton Company v. Collier, supra, the court failed to instruct the jury that the burden of proof was upon the

plaintiff to establish by a preponderance of evidence the allegations contained in the petition. There was no distinct charge by the court that the burden of the proof was on plaintiff; but, considering the charge as a whole, it clearly appears that the burden of proof was upon plaintiff to establish by evidence the facts upon which he sought to recover. Writ of error was refused.

[5] The burden of proof on the whole case does not shift, although the burden of introducing proof shifts back and forth according to affirmative issues. When the state shows that the land it sues for is situated within its borders, it makes a prima facie case, according to our decisions. The duty then devolves upon the defendants to show a grant from the state, and that the land sued for lies within the boundaries defined in such grant. In this case the defendants showed a patent calling for the San Jacinto river as one of its boundaries and showed that the land sued for is included in such boundaries. The state could not afford to let the evidence rest at this point, but undertook to show that, while the land was included within the grant according to its terms, in truth and in fact, as such grant had been marked on the ground, the land sued for was excluded. It presented two theories—one that there were two prongs of the San Jacinto river at the time the survey was made, and that the lands sued for constituted islands at that time; the other that, if there were not two prongs of the river, then that the call for the river was made by mistake and should be disregarded, the mistake relied on being that the surveyor mistook a slough for the river, and intended to appropriate land only to said slough. There can be no doubt that as to each of these contentions the state had the affirmative, and that it became necessary for it to establish one of them in order to obtain a judgment for the land.

The case was submitted on special issues; the only question asked being such as submitted the two theories as to each body of land sued for. The court wholly failed to instruct that the burden of proof was upon the state to establish the affirmative of issues 1 and 2, which related to the theory that there were two prongs of the river in 1838 constituting running streams. As to issues 3 and 4, it submitted a number of instructions usually given in boundary suits and finally instructed as follows:

(8) "And if you have found that the slough or channel north of the present river is not an abandoned portion of what was the main river in 1838, then you must find that the surveyor actually went to the north bank of the river as called for in his field notes, unless you believe that he went merely to the north bank of the channel or slough, thinking it was the river, and that he called it the river by mistake; and you are further instructed that the burden is upon the plaintiff to prove such mis-

213 S.W.—23

take, if any, by a preponderance of the evidence."

This charge is peculiarly worded, and apparently requires of the jury, as a basis for further proceedings, that they must find the negative of the first two issues, thus implying that defendants ought to show that the slough or channel is not an abandoned portion of what was the main river, instead of instructing at some place in the charge that the burden was upon the state to show that said slough was an abandoned portion of what was the main river in 1838. We take it the court did not intend to so shift the burden of proof, but merely intended to tell the jury that, if they answered questions 1 and 2 in the negative, then they must find that the surveyor went to the north bank of the river, as called for in his field notes, unless they find that he went merely to the north bank of the river or slough, thinking it was the river, and that he called it the river by mistake. If the jury find that the surveyor went merely to the north bank of the slough and called it the river by mistake, they should not find that he actually went to the north bank of the river, as called for in his field notes. These instructions were given to aid the jury in answering issues 3 and 4.

Those issues were: (1) Did the surveyor fix the southeast corner of the Mary Owens survey on the north bank of the San Jacinto river, or on the north bank of what the plaintiffs claim is the abandoned portion of the river? (2) The same question as to southwest corner of the Elijah Votaw survey. There is no inquiry in either concerning any mistake.

Now, it seems too clear for argument that, if the jury answered questions 1 and 2 in the affirmative, they would be bound to answer questions 3 and 4 to the effect that the surveyor placed the corners on the north bank of what the plaintiffs claim is the abandoned portion of the river. If they found that the river actually flowed through the channel when the survey was made, forming an island, they would naturally find that the surveyor fixed his corner on the bank of that prong of the river. Let us consider for a moment the possibility that the river ran in 1838 where it now runs, and did not divide, but that the surveyor marked his corner on the high bank of the slough. That could have been done by mistake or by intention. He might have believed that it was the river, and intended for his survey to stop there, or he might have known where the river ran, and have intended to appropriate all land up to the river, but marked his corner at a place deemed safe from the ravages of floods.

[6] The only theory on which a call for a river can be ignored is to show that it was made by mistake, just as any other call is

shown to have been made by mistake. Stark v. Stout, 174 S. W. 1017. Now, the jury may have answered issues 3 and 4, as it did, because such answers would logically follow from answering issues 1 and 2 in the affirmative. They certainly did not answer them as they did because they found the surveyor had made a mistake, for they found the river actually ran through the channel and therefore, if the surveyor thought it was the river, he made no mistake.

This brings us to the proposition that when the court, in the last sentence of paragraph 8, above copied, told the jury that the burden was on the plaintiffs to prove the mistake, if any, he gave an instruction which was of no benefit in deciding the issues submitted. It did not relate to any issue submitted by the court, and could not supply the place of a charge correctly placing the burden of proof. The two theories relied on by plaintiffs were so inconsistent that in drawing their issues, which they requested the court to give, they accompanied same with an instruction that if they answered either of the questions in the negative, as to whether a channel of the river flowed north of the land in controversy in 1838, then to answer the question whether a mistake was made. These theories are so inconsistent that a finding upon both in favor of the estate is impossible, and yet it is contended that the jury did this very thing in answering the issues actually submitted. As we view this case, the issues actually submitted could all have been decided upon a finding that there was a channel of the stream running north of the two bodies of land in 1838, and without reference to any issue of mistake. It is therefore futile to contend that in paragraph 8 the court gave an instruction on the burden of proof which should be held sufficient. That instruction could only tend to confuse, and not to assist. The defendants submitted a correct charge on the burden of proof in their special charge No. 6, and it should have been given. The evidence is so unsatisfactory in this case that we do not feel disposed to hold that the failure to instruct on the burden of proof was harmless.

[7] Appellants complain that the court erred in not permitting them to open and close the argument. The appellants never placed themselves in a position to open and close the argument. Article 1953 gives the right only when the party having under the pleadings the burden of proof on the whole case shall be entitled to open and conclude the arguments. The appellants reverse themselves in their contention on the burden of proof; they are claiming, on the one hand, the charge of the court did not sufficiently place it on appellee; now, by claiming the right to open and close the case, is to say

"the burden of proof on the whole case is on them." The right does not exist where the burden of the whole case does not rest on him. Heath v. First Nat. Bank of Cleburne, 19 Tex. Civ. App. 63, 46 S. W. 123; Hillbodt v. Waugh, 47 S. W. 829. Where defendant did not admit plaintiff's entire case, plaintiff is entitled to open and close the argument. Harris v. Pinckney, 55 S. W. 38; Halsell v. Neal, 23 Tex. Civ. App. 26, 56 S. W. 137. The right to open and close on the trial is a valuable right, and it is reversible error to wrongfully deprive one of its exercise. Meade v. Logan, 110 S. W. 188.

We do not think the court erred in refusing defendants the right to open and close this case.

For the error of the court, pointed out, in not properly charging on the burden of proof, and refusing to give the charge No. 6, submitted by appellants on the burden of proof, the judgment is reversed, and the cause remanded for another trial.